[Civ. No. 806. Second Appellate District.—September 13, 1910.]

W. B. METCALFE, County Treasurer of County of Santa
Barbara, State of California, Respondent, v. GEORGE
P. MERRITT, Appellant.

RECLAMATION DISTRICT—PUBLIC CORPORATION—STATE AGENCY—LIMITED
POWERS.—A reclamation district is a public, as distinguished from
a private, corporation. It acts as a state agency, invested with
certain limited powers, and restricted to the doing of a particular
work, public in its nature. It is not a municipal corporation, pos-
sessing in any degree general powers of government, but neverthe-
less, within the limits of the authority granted to it, it exercises
public functions.

ID.—SCHEME OF ORGANIZATION—SYSTEM OF RECLAMATION.—The scheme
of the organization of a reclamation district comprehends a com-
plete system for the doing of reclamation work, with all of the
incidental power to compel the payment of assessments levied, and
secure the accomplishment of the intended project of reclamation.

ID.—PUBLIC CORPORATIONS—COLLATERAL ATTACK UPON ORGANIZATION
NOT PERMITTED.—The existence of public corporations can only be
called in question by the power from which they derive their right
to be. An attack, collaterally made, with a view to testing the
regularity of their existence or organization, will not be permitted.

ID.—ACTION TO COMPEL PAYMENT FOR BONDS OF RECLAMATION DISTRICT
—COLLATERAL ATTACK UPON PETITION FOR ORGANIZATION.—In an
action to compel payment for bonds of a reclamation district pur-
chased by the defendant, a collateral attack upon the sufficiency of
the petition for organization of the reclamation district, the peti-
tion of which was approved by the board of supervisors, is collateral
and unauthorized, where there is nothing in the terms of his bid
which would allow him to question its organization collaterally.

ID.—BID FOR BONDS—CONDITION AS TO LEGALITY AND VALIDITY—CHARGE
UPON PROPERTY—DE FACTO CORPORATION.—A bid for bonds of a
reclamation district "contingent upon the bonds being legal and
valid," is satisfied, as a condition, if the bonds are binding upon the
property of the district. That condition is met where the district
had a *de facto* existence when it issued the bonds. As a *de facto*
corporation, the acts of its officers and trustees were binding; and
the purchaser of bonds of such a district would acquire a lien against
the property thereof; and it matters not to him whether the district
was duly organized or not.

ID.—UNTENABLE OBJECTION TO ORGANIZATION OF DISTRICT—SUFFICIENCY
OF DESCRIPTION IN PETITION—REFERENCE TO MAPS.—An objection
to the sufficiency of the description of lands in the petition for the

organization of the reclamation district is not tenable, where the description of a ranch by name refers to a map as an exhibit, which renders it sufficiently certain to sustain a deed thereof, and where the description of town lots therein refers to a map as an exhibit, from the scale of which can be calculated exactly the quantity of land contained in each lot.

ID.—SUBSTANTIAL COMPLIANCE WITH STATUTE.—A substantial compliance with the statute is all that is required to render the petition for the formation of an irrigation district sufficient.

APPEAL from a judgment of the Superior Court of Santa Barbara County. S. E. Crow, Judge.

The facts are stated in the opinion of the court.

E. W. Squier, for Appellant; Gray, Barker, Bowen, Allen, Van Dyke & Jutten, *Amicus Curiae,* also for Appellant.

Richards & Carrier, for Respondent.

JAMES, J.—Plaintiff in April, 1910, as treasurer of the county of Santa Barbara, offered for sale certain bonds of a reclamation district known as Reclamation District No. 798, which district had theretofore been organized under the provisions of section 3446 et seq., Political Code. In response to the offer defendant submitted a bid to purchase ten of the bonds for the price of $1,021.20. Ten per cent of this amount he deposited with his bid. Upon his offer being accepted demand was made that he pay the remainder of the purchase price, which he refused to do. This action was then brought to compel payment for the bonds.

In the complaint the various steps taken preliminary to the organization of the reclamation district, with the proceedings had subsequent thereto, including those for the issuance and sale of the bonds in question, are set out in detail. It is alleged, referring to the offer of defendant to purchase the ten bonds, that the bid "was made contingent upon said bonds being legal and valid." A general demurrer to plaintiff's complaint was presented and overruled. Defendant failed to answer and judgment was entered against him for the amount prayed for. From that judgment this appeal is prosecuted. The defendant by his demurrer sought to call into question the regularity of the organization of the district, directing

his attack solely to the original petition filed with the board of supervisors, by which the proceedings for the formation of the district were initiated. He contends that this petition was insufficient to give to that board jurisdiction to act, in that certain facts required to be stated therein were not set forth. Section 3446 of the Political Code provides that the petition shall contain, among other things, "a description of the lands by legal subdivisions, or other boundaries, the county in which they are situated, the number of acres in the proposed district and in each tract." The particular objection made, touching the sufficiency of the petition, is that it did not describe all of the land embraced within the proposed district by legal subdivisions or other boundaries, and that the acreage in certain parcels was not stated.

The board of supervisors approved the petition, and all of the subsequent steps required to be taken by the statute are conceded to have been taken, and to have been in regular form; they so appear to have been, as alleged in the complaint. Trustees were selected to manage the affairs of the district; work of reclamation was undertaken; indebtedness was incurred and money expended. The district became, and continued to be up to and after the time the bonds were issued, and still asserts the right to act as, a duly organized reclamation district. It had an existence *de facto* if not *de jure.*

Reclamation districts belong to that class of civil organizations denominated "public corporations." Mr. Dillon, in his work on Municipal Corporations, at paragraph 22, says: "Corporations intended to assist in the conduct of local civil government are sometimes styled political, sometimes public, sometimes civil, sometimes municipal; and certain kinds ·of them, with very restricted powers, *quasi* corporations. *All of these by way of distinction from private corporations.* Thus an incorporated school district or county, as well as city, is a public corporation; but the school district, or county, properly speaking, is not, while a city is, a municipal corporation."

Under this classification a reclamation district is a public, as distinguished from a private, corporation. It acts as a state agency invested with certain limited powers, and restricted to the doing of a particular work, public in its nature.

It is not a municipal corporation possessing in any degree general powers of government, but nevertheless, within the limits of the authority granted to it, it exercises public functions. Among other rights conferred is that to make rules for the government of the district which are binding upon the property holders and their successors; indebtedness can be incurred for reclamation work, and the charge may become a lien against the real property of the district. The scheme of organization comprehends a complete system for the doing of reclamation work, with all of the incidental power to compel the payment of assessments levied, and secure the accomplishment of the intended project of reclamation. Such a district, to be sure, possesses autonomy in a very limited sense, but it is in no wise a private corporation. As to public corporations of any variety, the decisions are almost unvarying to the effect that their existence cannot be called into question by any suitor, except the power from which they derive their right to be; and that an attack, collaterally made, with a view to testing the regularity of their existence or organization, will not be permitted. (*Quint* v. *Hoffman,* 103 Cal 506, [37 Pac. 514, 777].) In the case of *Reclamation District No. 542* v. *Turner,* 104 Cal. 335, [37 Pac. 1039], the supreme court, in considering a like question, said: "This court has repeatedly held that corporations similar to the plaintiff in this case are of a *quasi* public character, and that the legality and regularity of the proceedings leading up to their final creation, cannot be attacked collaterally. This is the course attempted to be pursued here, and a long line of authority is opposed to it."

The defendant in this case is in the same position as was the defendant in the case last noted, and the attack which he makes is collateral and unauthorized, unless there is something in the terms of his bid which permits him to assume a different position. The bid for the ten bonds was, as expressed in the language of the complaint, "contingent upon the bonds being legal and valid." This condition would entitle defendant to question any proceeding which was so defective as to invalidate the bonds. If the bonds are binding obligations against the property of the district, however, that is all that defendant can ask or require. As before suggested, the district had a live *de facto* existence when it is-

sued the bonds. As a *de facto* corporation the acts of its trustees and officers were binding. The purchaser of bonds of such a district would acquire a lien against the property thereof, securing the payment of these obligations. Defendant here cannot go further in his inquiry when this fact has been ascertained, and it matters not at all to him then whether the district was duly organized or not. In the case of *Hamilton* v. *County of San Diego,* 108 Cal. 283, [41 Pac. 305], the plaintiff was a taxpayer within the Coronado school district and brought his action to recover money paid to satisfy an assessment levied for school purposes, basing his right to recover on the ground that the district had no legal existence. It was said by the supreme court in that case: "Since the Coronado school district had a *de facto* existence, the plaintiff could not have enjoined the collection of taxes, nor have resisted an action for the same on the ground of illegality of its organization." (Citing cases.) This decision, and the cases cited therein, fully support the position we have taken here, and these conclusions, we believe, are not in conflict with anything that was said in the cases of *People* v. *Reclamation District No. 551,* 117 Cal. 114, [48 Pac. 1016], and *Reclamation District No. 537* v. *Burges,* 122 Cal. 442, [55 Pac. 156], when those decisions are considered strictly in the light of the particular points presented and the facts involved.

The appeal of defendant is thus disposed of; and while the court is not called upon to consider the objections urged to the sufficiency of the petition presented to the board of supervisors for the organization of the district, in view of further litigation which may follow upon the same subject, it is appropriate, and perhaps desirable, that something more be said. In our opinion, the petition was sufficient. The description of the land embraced within the Rancho Guadalupe was quite general in character, but it referred to what was apparently a well-known ranch and also referred to a map made by one Stratton. This map is not alleged to have been recorded, but with the reference to it, as made in the petition, under the decision in *Vance* v. *Fore,* 24 Cal. 444, the land was described with sufficient definiteness to make a good conveyance. If sufficient for that purpose it must have been sufficient for the purposes of a petition like the one here attacked. So, also, as to the objection that the acreage of lots

in the town of Guadalupe is not stated. There is a map of the town of Guadalupe attached to the complaint and made a part of it. This map bears indorsements that it was made in 1875 and recorded in 1880 in the recorder's office of Santa Barbara county. Where many of the lots are delineated thereon, the footage on exterior lines is shown dimly. There is a further indorsement on the map showing the scale upon which the lines are drawn. By a simple calculation the quantity of ground contained in each lot can be readily ascertained. A substantial compliance with the provisions of the statute is all that is required, and tested by that measure, the petition was sufficient.

The judgment is affirmed.

Allen, P. J., and Shaw, J., concurred.