BIRCH RANCH & OIL COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8720. Promulgated December 15, 1949.

*George Acret, Esq.*, for the petitioner.
*Earl C. Crouter, Esq.*, for the respondent.

934

OPINION.

JOHNSON, *Judge*: Petitioner charges the Commissioner with error in failing to allow the deduction of a net operating loss carry-back in the computation of its income and declared value excess profits taxes for the fiscal year ended September 30, 1942, by virtue of a net operating loss of $186,899.37 sustained by it for the fiscal year ended September 30, 1944. Originally petitioner also assigned as error the Commissioner's disallowance of the unpaid portion of a deduction of $120,000 claimed on each of its returns for the fiscal years 1941 and 1942 as accrued taxes payable by it to Reclamation District No. 2035. When the petition was filed, a similar issue was pending before this Court in Docket No. 109993, involving petitioner's right to deduct the same accrued liability of $120,000 for each of the fiscal years 1937 and 1939. This Court's holding that petitioner's books were kept on a cash basis and that it was entitled to deduct only the $18,600 paid to the Hopkins sisters and the $600 paid to Lula Minter was affirmed by the Circuit Court of Appeals for the Ninth Circuit on January 6, 1942, as reported at 152 Fed. (2d) 874.

At the first hearing of this proceeding, on June 30, 1947, petitioner, accepting the holding that its books were kept on the cash basis, conceded that there were deficiencies in tax as determined for its fiscal years 1941 and 1942, but asked the Court to provide in its order that the tax liability for the fiscal year 1942 be computed to reflect the carry-back of losses sustained by it in the fiscal year 1944. Rejecting respondent's contention that a decision of deficiencies in the amounts determined be entered without adjustment for any carry-back, this Court, in a memorandum opinion entered March 24, 1948, took note that petitioner's right to a carry-back was properly raised as an issue and held that such issue was a proper subject for decision. Petitioner then moved to reopen the case for the purpose of presenting evidence relative to its net operating loss for the fiscal year 1944. This motion was granted, and petitioner thereafter amended its petition to make allegations concerning the payments made to the county treasurer and to plead that the respondent was estopped to deny the deduction of these payments in the fiscal year 1944. The issue thus raised for decision requires a determination of petitioner's right to deduct as taxes in the fiscal year 1944 the $221,610.87 which it paid in that year to the treasurer of Yolo County on calls under the tax assessment of the reclamation district against the Conaway Ranch.

In a report dated January 23, 1947, addressed to petitioner, the revenue agent in charge of the Los Angeles division allowed the deduction in question and computed a net operating loss of $186,899.37 for the fiscal year 1944. Petitioner now argues on brief that, since it paid the deficiencies of $12,398.85 determined (but not assessed) for the

fiscal year 1941 in reliance on this report, respondent should be estopped from denying it the advantage of the carry-back deduction therein recognized as allowable for the fiscal year 1942, which deduction it anticipated in making the payment. The agent's first computation was reversed, however, and in a later report, dated December 8, 1947, the payment of the $221,610.87 was not allowed as a deduction, with the result that the net loss for 1944 was converted into a net income of $34,711.50. As a consequence the Commissioner determined that there was no loss carry-back from the fiscal year 1944 available as a deduction for the fiscal year 1942.

We fail to perceive in the Commissioner's action any basis whatever for an estoppel. The amount of the deficiency for the fiscal year 1941 was in nowise affected by any deduction on account of a loss carry-back to which petitioner might or might not be entitled for 1942. Petitioner had no right, under the decision in Docket No. 109993, to deduct in 1941 taxes due to the reclamation district which it had accrued but not paid. It so admits by abandoning all issues relating to the fiscal year 1941. There was hence no issue raised as to 1941 about which the Commissioner's action could have misled petitioner, and in any event the payment was not applied to the 1941 deficiencies, which have not yet been assessed, but was placed in a suspense account.

By section 23 (c) (1), Internal Revenue Code, taxes paid or accrued within the taxable year are deductible, except:

(E) taxes assessed against local benefits of a kind tending to increase the value of the property assessed; but this paragraph shall not exclude the allowance as a deduction of so much of such taxes as is properly allocable to maintenance or interest charges; * * *

As all of the $221,610.87 paid to the county treasurer was for application to interest charges, none of it is excluded as a deduction by the statutory exceptions, and respondent does not contend that it was. Its disallowance was explained in the agent's second report as follows:

This disallowance is based on the fact that there was no real or actual obligation outstanding against the taxpayer, since Reclamation District No. 2035 was comprised exclusively of the taxpayer's property, and since A. Otis Birch and his wife, Estelle Birch, the sole stockholders of the Birch Ranch and Oil Company hold substantially all the bonds of the Reclamation District.

Section 23 of the Internal Revenue Code states:

DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

(b) INTEREST.—All interest paid or accrued within the taxable year on indebtedness, except on indebtedness incurred or continued to purchase or carry obligations * * * the interest upon which is wholly exempt from taxes by this chapter.

(c) TAXES—GENERALLY.—

(1) ALLOWANCES IN GENERAL—TAXES PAID OR ACCRUED WITHIN THE TAXABLE YEAR EXCEPT—

(a) taxes assessed against local benefits of a kind tending to increase the value of the property assessed.

As the interest received by A. Otis Birch and his wife, Estelle Birch, is non-taxable the amount claimed as taxes paid by the Birch Ranch and Oil Company is considered non-deductible.

Respondent, now defending the disallowance on both the above grounds, argues, first, that the Birches, the petitioner, and the reclamation district were all one and the same in substance, since petitioner owned all the assessed land in the district, the Birches through Holding owned all the stock of petitioner, and they and petitioner owned substantially all the bonds of the district. On this background he reasons that in effect the same party paid the taxes in controversy and received the tax-exempt interest which those taxes supplied. He urges that under such circumstances the district should be ignored for tax purposes as a legal fiction, and that the tax and interest payments should be disregarded as not having any business purpose and not discharging any real legal obligation.

To buttress this view, respondent cites numerous sections of the Political Code of California, part 3, title 8, ch. 1, art. 2, relating to reclamation districts, pointing out that section 3472 authorizes the formation of a district without the intervention of trustees by parties owning all the land affected; that section 3480 empowers the land-owners of those districts which are under trustees to authorize bonds by vote; requires that 10 per cent of any bonds issued be retired within ten years of issuance; that a fund be created for such retirement; that parcels of land be sold to provide delinquencies in assessment payments; that the district's bonds may be used in satisfaction of assessments; and that section 3493 permits owners of 50 per cent of the land to dissolve the district. He concludes that Reclamation District No. 2035 was in fact, if not in form, a private district; that in actual operation it was treated as a private district, because no assessment taxes were paid from 1937 to 1943, no sinking fund was created, and the fiction of a public district was artificially kept alive to the end that petitioner might deduct the amount which it paid as taxes, which amount it or its two stockholders received back as tax-exempt interest.

The essential factual premises or inferences which respondent assumes for this argument are not adequately supported by the evidence. We can disregard as negligible the 240 district acres which petitioner did not own and against which an assessment for bond interest apparently was not made, but we can not lightly ignore a public district invested with taxing powers and other sovereign attributes and the substance attaching to the very large number of bonds which were

held by parties who had no identity of interest with the Birches and whose right to bond interest was consistently observed—in one case, after threat of suit. The Hopkins sisters acquired 786 of the 2,000 bonds in 1925; they owned 310 from 1931 to March 15, 1944, or during 5½ months of the fiscal year 1944. At an undisclosed date the Birches sold 86 bonds to the Great Republic Life Insurance Co., and its successors sold these bonds to petitioner in 1940; the Birches sold 10 bonds to Lula Minter, who held them throughout the fiscal year 1944. Petitioner regularly paid to the Hopkins sisters and to Lula Minter the amount of accrued current interest due them, receiving and turning over the interest coupons to the county treasurer. By so doing it acquired a credit in the same amount on the district's assessment for interest (see sec. 11, art. II, ch. 1, title 8, part 3, Political Code of California), and hence it is not technically correct to say that no assessment taxes were paid from 1937 to 1944. An amount of $19,200 was paid each year, and, under this Court's decision in Docket No. 109993, the amounts so paid were deductible.

Without formally pleading *res judicata*, petitioner argues on brief that the question of the recognizable character of the district and petitioner as separate entities is in fact *res judicata* by virtue of our holding in the prior proceeding. While that decision, involving the fiscal years 1937 and 1939, would not here support the plea, if made, see *Commissioner* v. *Sunnen*, 333 U. S. 591, we deem the facts therein considered so nearly identical with those existing in the fiscal year 1944 as to require the same conclusion previously reached. To view the tax assessment as paid by the same party which received the bond interest, it is not enough to identify petitioner, Holding, and Securities with Birch and his wife. It is also necessary to identify with them the reclamation district, and this district is, by state law, "a public, as distinguished from a private, corporation. It acts as a state agency invested with limited powers   *   *   *." (*Metcalfe* v. *Merritt*, 14 Cal. App. 244; 111 Pac. 505.)

Respondent cites *Rindge Land & Navigation Co.*, 2 B. T. A. 1179, and the very similar case of *California Delta Farms, Inc.*, 6 B. T. A. 1301, as decisions in which a similar district was for tax purposes identified with the sole landowner in it. In the former case the sole landowner, a corporation, had caused the district to issue to it a warrant for an amount in excess of the cost of property which it transferred to the district, and had used that warrant to procure all the district bonds, which bonds it gave to creditors in place of certain indebtedness of its own. The Board of Tax Appeals refused to recognize the excess of the warrant over the property as resulting in taxable gain, but, in so doing, expressly confined its "discussion

and decision to the particular facts." As those facts indicated that the taxpayer owned *all* the district and procured *all* the bonds, obviously no third party's interest was involved and the price named for the property was admittedly arbitrary and designed to further the taxpayer's debt-refunding scheme. As the issue related only to a sale between the landowner and the district, moreover, the legal incidence of bonds and assessments was not even involved. But the intervention of even a small interest by third parties has been deemed to preclude a disregard of the separate character of a public district. In *Kings County Development Co.*, 27 B. T. A. 1291, the taxpayer's gain on a sale of property to a reclamation district was held taxable, even though the taxpayer owned 80 per cent of the district land. In so deciding, the Board expressly recognized that "Such districts are separate and distinct legal entities from the landowners within the district * * *."

Respondent correctly asserts that in numerous cases deductions such as interest have been held unallowable where it appeared that the payor and payee were economically identical, e. g., *Prudence Securities Corporation* v. *Commissioner* (C. C. A., 2d Cir.), 135 Fed. (2d) 340; *Marian Bourne Elbert*, 45 B. T. A. 685. But the decisions on which he relies do not involve tax assessments of a public corporation or interest payable on its bonds, a substantial number of which were owned over the years by parties having no identity of economic interests with the taxpayer. We have already held, in Docket No. 109993, that the amounts which petitioner supplied in satisfaction of interest on bonds held by the Hopkins sisters and Lula Minter were deductible. The Hopkins sisters continued to own bonds during nearly half of the fiscal year 1944 and Lula Minter owned 10 during all of that year. That part of petitioner's assessment payments used to pay interest on their bonds is obviously deductible under the prior decision. Should a distinction be made in regard to the tax applied to interest payments on petitioner's bonds? We think not. The funds which the district collected by its assessment calls were for the payment of interest in general, and we are of opinion that petitioner's right to deduct its payments as a tax is not defeated by the fact that a part of such payments became available to pay interest on bonds held by it, by Securities, by Holding, or by the Birches. *Andrew Little*, 21 B. T. A. 911.

Respondent argues further that the "payments of interest on reclamation bonds" were the payment of interest on indebtedness incurred and continued to purchase and carry tax-exempt obligations, and hence such payments are not deductible under section 23 (b) of the code. Recognizing the reclamation district as a legal entity, we

view petitioner's payments as made in satisfaction of taxes, not of interest, and the argument thus lacks factual foundation. As taxes assessed for interest only, they are not of a kind tending to increase the value of the property assessed, and are hence properly deductible. *Mary E. Evans*, 42 B. T. A. 246; *Missouri State Life Insurance Co.*, 29 B. T. A. 401; *Andrew Little, supra.*

We hold that the Commissioner erred in failing to allow the deduction of the taxes of $221,610.87 paid by petitioner in the fiscal year 1944, and that the amount of petitioner's net operating loss for that year, available as a carry-back to the fiscal year 1942 under the provisions of section 122 (b) (1), should be recomputed to reflect such deduction. In his answer to petitioner's "Supplement and Amendment to Petition," respondent admitted:

\* \* \* a determination of a disallowance of a deduction claimed by the petitioner for the taxable year 1944 in the amount of $221,610.87 for alleged taxes or interest paid, and that as a result of such disallowance the respondent has found and determined that petitioner had no net loss carry-back from 1944 to the taxable year 1942; \* \* \*

As no factor of computation other than treatment of the $221,610.87 taxes paid was put in issue, the effect of this decision is limited to a deduction of those taxes in arriving at the amount of net operating loss for the fiscal year 1944 and the carry-back available as a deduction for the fiscal year 1942.

Reviewed by the Court.

*Decision will be entered under Rule 50.*