Marion I. Bowen, also known as M. I. Bowen v. Commissioner.
Bowen v. Commissioner
Docket No. 23128.
United States Tax Court
T.C. Memo 1954-92; 1954 Tax Ct. Memo LEXIS 163; 13 T.C.M. (CCH) 640; T.C.M. (RIA) 54197; June 30, 1954, Filed *163 Robert E. Forney, Esq., and W. J. Forney, C.P.A., for the petitioner. Stanley Schoenbaum, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent determined deficiencies in income tax and penalties against petitioner as follows: Fraud
Negligence
Year
Income Tax
Penalty
Penalty
1943
$10,337.51
$516.88
1945
16,463.19
$6,880.46 In his answer to the petition, respondent affirmatively alleged that petitioner filed a false and fraudulent return for the year 1945 with intent to evade tax, and that part of the deficiency for that year was due to fraud with intent to evade tax. Petitioner filed no reply to these affirmative allegations. A motion that all affirmative allegations in his answer not denied by petitioner be deemed admitted was subsequently made by respondent. An order for petitioner to show cause why respondent's motion should not be granted was entered and served on petitioner. The motion was set down for hearing and there being no appearance for petitioner and no reply having been tendered, the motion was granted by a Court order entered November 30, 1949 under Rule 18, Tax Court *164 Rules of Practice. Petitioner's motion made at the hearing herein to set aside this order was denied. Respondent's motion made at the hearing for judgment on the pleadings with respect to the fraud penalty was taken under advisement. The adjustments for the year 1943 are no longer contested by petitioner; certain other issues have also been conceded. The questions to be decided are (1) whether certain amounts received by petitioner in 1945 constitute taxable income; (2) whether petitioner is entitled to a bad debt deduction in that year; (3) whether respondent is entitled to judgment on the pleadings with respect to the fraud penalty for that year; and (4) if not, whether respondent has sustained his burden of proving that some part of any deficiency for that year was due to fraud with intent to evade tax. Findings of Fact Some of the facts have been stipulated and are hereby found. Petitioner is an individual residing in the City of Jacksonville, Florida. He filed his income tax return for the year 1945 with the collector for the district of Florida. During the year 1945, petitioner was a liquor broker principally engaged in selling Southern Comfort liquors in Florida under *165 a contract with Thomas Brothers of Indianapolis, Indiana, who were national sales agents for Southern Comfort Corporation of St. Louis, Missouri. Petitioner was paid a commission of 5 per cent by Thomas Brothers for handling the sales of Southern Comfort in the Florida area. Petitioner had distributors in the cities of Jacksonville, Miami, Tampa, and Pensacola, Florida. His principal distributor was St. Johns Liquor Distributor, hereinafter referred to as St. Johns, in Jacksonville. Petitioner's dealings with St. Johns were handled with the company's president, Harry L. Seaman. Petitioner had an arrangement with his distributors whereby they would refund to him 5 per cent of the sales or one-fourth of their 20 per cent mark-up as an advertising fund, hereinafter sometimes referred to as "side payments," except St. Johns with whom he had a 10 per cent or one-half of mark-up refund arrangement. The liquor business during the year 1945 was prosperous. Prior to the establishment of the St. Johns 10 per cent refund arrangement, St. Johns was obligated to petitioner for a liquor loan. Of the one-half of the mark-up agreed to be refunded to petitioner by St. Johns, one-fourth of *166 the mark-up was to go into the advertising fund as planned and the other quarter of the mark-up was to be used to eliminate St. John's obligation to petitioner. By application of the extra one-quarter of the mark-up to the loan it took no more than a few months to discharge the obligation of St. Johns to petitioner. In the beginning of petitioner's operations on behalf of Southern Comfort liquors, there was no distributor in Tampa. The Tampa territory was handled on a personal solicitation basis for St. Johns, orders obtained by petitioner from retailers there being sent to St. Johns. Sometime in 1944, petitioner established Anita Beverage Company, hereinafter referred to as Anita, at Tampa as a distributor on the same basis as other distributors. The payments to petitioner from his distributors were in most instances made by check payable to cash and were cashed rather than deposited in an account. No records of these payments were kept and none were produced either for the Internal Revenue examining agent or at the trial. Petitioner received commissions or profits from dealings in Southern Comfort in the amount of $47,413.53 during 1945, as follows: Allied Liquor Distributors
$15,500.14
Vann Warehouse
4,746.14
Thomas Bros.
22,470.00
Pensacola Liquor Distributors
2,900.00
Fulton Liquor Distributors
1,355.50
King Distributing Co.
441.75
Total
$47,413.53
*167 In addition, petitioner received income from Southern Comfort dealings from the following sources: St. Johns Liquor Distributors
$18,695.28
Anita Beverage Company
5,348.50
During the taxable year ended December 31, 1945, petitioner also received taxable income in the following amounts and from the following sources: Distilled Liquors, Inc.
$5,996.00
Williams Import Company
1,261.79
Total
$7,257.79
On his income tax return for the taxable year ended December 31, 1945, petitioner only disclosed gross receipts in the amount of $46,208.41 which consisted of the following: Commissions or profits on transac-
tions in Southern Comfort Liquors
$38,950.62
Income from transactions with Dis-
tilled Liquors, Inc.
5,996.00
Income received from transaction with
Williams Import Company
1,261.79
Total
$46,208.41
No records of any nature were kept on the "side payment" income. Petitioner kept no adequate records of any advertising expenditures. Petitioner had full control over these "side payments" and could use them in any way he chose. In the middle of 1945, Seaman became ill and lost a great deal of time from his business. *168 In August 1945, Seaman gave to petitioner St. Johns' check for $5,420.40, upon which payment was stopped. Petitioner has not shown what the amount of the stopped check represented. After Seaman died, petitioner did not file a claim for this amount against Seaman's estate. Any obligation that St. Johns or Seaman may have owed petitioner prior to 1945 was discharged soon after St. Johns entered into dealings with petitioner. There were no adequate records of any indebtedness of St. Johns or Seaman due petitioner. Any debt represented by the check became uncollectible, if at all, subsequent to the year 1945. Guy C. Garrett assisted petitioner in the preparation of his income tax return from information furnished by petitioner. Garrett was neither an accountant nor an attorney and was not shown to be qualified to advise on tax matters. He is presently in the contracting business. He did not sign petitioner's return as is required of one preparing an income tax return. Garrett was unable to recall being furnished any records by petitioner as to the receipt of income from "side payments" from petitioner's liquor distributors. He was unable to recall anything about the so-called *169 advertising fund. He did not remember the existence of any debt due petitioner from Seaman. Petitioner had taxable income from transactions in various types of whiskey and liquors in a large amount, which he omitted from his 1945 income tax return. The omission by petitioner of some part of his taxable income from transactions in various types of whiskey and liquors was due to a fraudulent intent to evade the payment of his income taxes. Petitioner did not sustain a deductible bad debt or a deductible loss in the amount of $5,348.50 or $5,420.40 from Seaman or St. Johns in the year 1945. Opinion Most of the issues have been disposed of by our findings. We have concluded that all of the sums received as "advertising fund" were in fact income to petitioner, as, indeed, he concedes. Because of the obviously deceptive manner in which these payments were handled, and the complete lack of corroborative evidence or records, we are unable to credit petitioner's statements that he loaned or returned to St. Johns a part of the money paid to him by it and by Anita. If there was any such debt, which we are unable to find, it did not become worthless in the taxable year. [1]
*170 As to the fraud issue, the motion for judgment on the pleadings, which was taken under advisement at the hearing, must be granted. Robert Kenneth Black, 19 T.C. 474; F. O. Statler, 27 B.T.A. 342. The case of Solomon Beringer, 29 B.T.A. 250, relied on by petitioner, is in fact further authority in favor of respondent since, as there, (page 251) "the facts constituting fraud are under the rule to be taken as admitted because of the failure of a reply." And unlike James Nicholson, 32 B.T.A. 977, 985, affd. on other issues (C.A. 8) 90 Fed. (2d) 978, respondent made the appropriate motion here, and no reply was permitted to be, or was in fact, ever filed by petitioner. The motion for judgment on the fraud issue is accordingly being granted, and our finding of fact has been made accordingly. Decision will be entered for the respondent. Footnotes
1. The alternative contention raised for the first time in petitioner's reply brief that a debt becoming worthless in 1946 or 1947 would be equally allowable on a loss carry-back theory cannot be considered in the present state of the pleadings. See Sangston Hettler, 16 T.C. 528, 535; Eric H. Heckett, 8 T.C. 841, 844; Samuel J. Rissman, 6 T.C. 1105. 1117. Cf. Birch Ranch & Oil Co., 13 T.C. 930, affd. (C.A. 9) 192 Fed. (2d) 924↩.