Morton Q. Petersen v. Commissioner.
Petersen v. Commissioner
Docket No. 4525-67.
United States Tax Court
T.C. Memo 1971-21; 1971 Tax Ct. Memo LEXIS 313; 30 T.C.M. (CCH) 95; T.C.M. (RIA) 71021; January 25, 1971, Filed. George R. Blue and A. J. Schmitt, *315 Jr., Suite 300, The Howard Triangle, 833 Howard Ave., New Orleans, La., for the petitioner. Bruce A. McArdle, for the respondent. TANNENWALD
Memorandum Findings of Fact and Opinion TANNENWALD, Judge: Respondent determined a deficiency of $23,943.27 in petitioner's income taxes for 1959. The central issue for decision is the extent to which petitioner incurred a net operating loss in 1961 which, pursuant to section 172, [1] can be carried back and offset against his income for an earlier year. Findings of Fact All of the facts have been stipulated and are found accordingly. Petitioner Morton Q. Petersen was a resident of Shreveport, Louisiana, at the time the petition herein was filed. He filed timely returns on a cash basis for the taxable years 1958 through 1961 with the district director of internal revenue, New Orleans, Louisiana. At all times pertinent hereto, petitioner was the sole shareholder of three corporations, Petersen Petroleum Corporation (hereinafter "Petroleum"), Petersen Exploration, Inc. (hereinafter "Exploration"), and Marlin Exploration, Inc. (hereinafter *316 "Marlin"), which were engaged in various phases of the oil and gas business. He acquired all of the outstanding stock of Exploration by way of gift from his father on September 26, 1959; the stock was without value on that date. On February 1, 1960, all of the assets and liabilities of Petroleum and Exploration as represented on the corporate books were as follows: *13 Assets
Petroleum
Exploration
Cash in bank:
Nat'l Bank of Commerce
$ 2,852.34
$ 83.46
Commercial Nat'l Bank 1,013.23 6.65
Total Cash in bank
$ 3,865.57
$ 90.11
Utility deposits
120.00
Accounts receivable:
Trade
$ 8,375.24
$ 199.40
Tax refund claim
7,932.70
Officers
13.83
M. Q. Petersen
7,700.00
80.00
Petersen Drilling Co., Inc
6,419.68
700.87
Marlin Exploration, Inc.
2,745.33
1,239.96
Petersen Exploration, Inc. 3,000.00 36,186.78 2,220.23
Inventories:
Rig supplies
1,308.20
Tubular goods
393.22
Crude oil 398.42 2,099.84
Prepaid insurance
2,237.44
1,488.14
Investments:
Royalties
2,185.94
Undeveloped leases
1,580.01
9,493.21
Producing leases 491.17 4,257.12 9,493.21
Fixed assets:
Lease equipment
$130,312.65
Drilling equipment
119,083,48
$163,962.68
Transportation equipment
8,090.18
11,238.65
Office equipment 1,861.32
$259,347.63
1,275.14
$176,476.47
Total assets $308,114.38 189,768.16
*317 96 *13 Liabilities
Petroleum
Exploration
Notes Payable - N.B.C.
$188,000.00
Accounts payable:
Trade
$ 2,890.47
$ 1,535.16
Petersen Drilling Co., Inc.
3,343.78
10,615.54
Petersen Petroleum Corp.
3,000.00
Marlin Exploration, Inc. 517.41 $ 6,751.66 15,150.70
Accrued expenses:
La. corp. franchise
114.00
10.00
Mississippi income
71.44
Severance tax 88.28 273.72 10.00
Reserves for depreciation:
Lease equipment
113,999.38
Drilling equipment
85,549.84
26,514.05
Transportation equipment
1,934.24
1,910.00
Office equipment 1,861.32
203,344.78
152.43
28,576.48
Total liabilities $210,370.16 $231,737.18
Per books:
Capital Stock
$ 56,500.00
$ 12,500.00
Surplus
41,244.22
(54,469.02)
On the same day, February 1, 1960, Petroleum and Exploration were dissolved. Also on the same day, these assets and liabilities were transferred to petitioner and from petitioner to Marlin, with the following exceptions: (a) Accounts payable by petitioner to Petroleum in the amount of $7,700 and to Exploration in the amount of $80 were cancelled. (b) An account payable by Exploration *318 to Petroleum in the amount of $3,000 was cancelled. (c) Accounts payable by Marlin to Petroleum in the amount of $2,745.33 and to Exploration in the amount of $1,239.96 were retained by petitioner. The account on Exploration's books entitled "Notes payable - N.B.C." represented two notes, in the amounts of $158,000 and $30,000, respectively, owed to the National Bank of Commerce, New Orleans, Louisiana. Both of these notes were personally guaranteed by petitioner. On February 1, 1960, the books and records of Marlin reflected that petitioner was personally indebted to Marlin in the amount of $31,700. Against the transfer of the net assets of Exploration and Petroleum to Marlin, petitioner's account on the books and records of Marlin was credited with $47,995.20, [2] resulting in a credit balance, per said books and records, due petitioner in the amount of $16,295.20. *319 On the same day, Marlin executed a note payable to the National Bank of Commerce, New Orleans, Louisiana, for $188,000 and the notes of Exploration for $158,000 and $30,000 were cancelled. Petitioner personally guaranteed the new notes. No payments on any of the notes were made prior to August 7, 1962. In his 1960 tax return, petitioner reported a gain of $41,244.22 from the liquidation of 97 Petroleum and treated this gain as ordinary income pursuant to section 333. He also reported a loss of $54,469.02 from the liquidation of Exploration and treated this loss as a short-term capital loss. [3] His 1960 return showed an offset against this amount of $3,606.36 in long-term capital gains and the utilization of $1,000 of the net capital loss as a deduction against ordinary income. The remaining balance of $49,068.52 was carried forward to 1961 and utilized as an offset against a larger amount of capital gains in that year. *320 Opinion Petitioner's first contention is that the proposed deficiency is barred by the statute of limitations. He argues that the events giving rise to at least $49,068.52 of the claimed loss occurred in 1960, a barred year, and that respondent cannot base a deficiency upon a treatment of the 1960 events which is different from the treatment petitioner accorded the same 1960 events in his 1960 return, even though those events were a significant element in determining the amount of his net operating loss for 1961. In so arguing, petitioner misconceives the scope of inquiry with respect to 1961, a year which the parties agree is still open. See section 6501(h). The situation can best be viewed by considering this issue against a factual situation where no operating loss was involved and determining whether respondent could question the right of petitioner to claim the capital loss carryforward from 1960 against otherwise taxable *321 capital gains. Since the events of 1960 would affect the petitioner's tax liability for 1961, such an inquiry would be entirely proper. Lord Forres, 25 B.T.A. 154, 158 (1932); cf. Lawrence W. Carpenter, 10 T.C. 64 (1948). [5]The fact that a net operating loss carryback is involved does not enlarge petitioner's rights. Dynamics Corporation of America v. United States, 392 F. 2d 241, 249 (Ct. Cl. 1968); Phoenix Coal Co. v. Commissioner, 231 F. 2d 420, 421-422 (C.A. 2, 1956), affirming a Memorandum Opinion of this Court; Commissioner v. Van Bergh, 209 F. 2d 23, 25 (C.A. 2, 1954), reversing and remanding on another issue, 18 T.C. 518 (1953); Industrial Suppliers, Inc., 50 T.C. 635, 648 (1968); State Farming Co., 40 T.C. 774, 781, 783 (1963); W. M. Ritter Lumber Co., 30 B.T.A. 231, 277-278 (1934). Petitioner's reliance on Edward G. Leuthesser, 18 T.C. 1112 (1952), Ione P. Bouchey, 19 T.C. 1078 (1953), and Deakman-Wells Co. v. Commissioner, 213 F. 2d 894 *322 (C.A. 3, 1954), is misplaced. All of those cases involved the right of respondent to question events in a barred year where respondent's claim was for a deficiency with respect to that year. See Phoenix Coal Co. v. Commissioner, supra, 231 F. 2d at 422. Nor does the fact that respondent failed to question the capital losses for 1960 as a result of the first examination of the return for that year in any way estop him from inquiring into those events in determining a deficiency for 1961. Wiles v. United States, 312 F. 2d 574, 577-578 (C.A. 10, 1962); Municipal Bond Corporation, 41 T.C. 20, 31-32 (1963), reversed on other grounds, 341 F. 2d 683 (C.A. 8, 1965); see First National Bank of 98 Montgomery v. United States, 176 F. Supp. 768 (M.D. Ala. 1959), affirmed per curiam, 285 F. 2d 123 (C.A. 5, 1961). Cf. Dixon v. United States, 381 U.S. 68 (1965); Automobile Club v. commissioner, 353 U.S. 180 (1957); Commissioner v. Mooneyhan, 404 F. 2d 522, 528 (C.A. 6, 1968); Laura Massaglia, 33 T.C. 379, 386-387 (1959), affd. 286 F. 2d 258 *323 (C.A. 10, 1961); Birch Ranch & Oil Co., 13 T.C. 930, 936, 937-938 (1949), affirmed on other issues, 192 F. 2d 924 (C.A. 9, 1951). We hold that respondent is not precluded from contending herein that the extent to which petitioner suffered capital losses in the taxable year 1960 should be taken into account in determining his taxable income and, therefore, the extent of his net operating loss for the taxable year 1961. Accordingly, we turn to the substantive issue involved. Petitioner contends that the transactions which occurred on February 1, 1960 produced a loss of $54,469.02, an amount which is the equivalent of the deficit shown on the books of Exploration on that date. In essence, he argues that we should consider the distributions of the assets and liabilities of Petroleum and Exploration as separate bona fide liquidations and the transfer by petitioner of the assets and liabilities of both corporations to Marlin as a transfer separate from the liquidations, i.e., in effect a sale thereof by petitioner to Marlin. Unfortunately, *324 petitioner is not clear as to which of these transactions is claimed to have produced his loss. However, as we view the facts, this lack of clarity is immaterial. Even accepting for purposes of decision the separability of the transactions as urged by petitioner, petitioner did not suffer any loss in either a legal or an economic sense. In reaching this conclusion, we have reflected the agreement of the parties that the book values of the various assets involved represent their fair market value. [6]
Proceeding from the foregoing premises, we look first at the liquidation of Exploration. Upon the liquidation of that corporation, petitioner received assets as follows: Cash
$ 90.11
Accounts receivable *
2,140.23
Prepaid insurance
1,488.14
Investments
$ 9,493.21
Fixed assets (after deducting depreciation reserve) 147,899.99
Total
$161,111.68
Liabilities existed against these assets as follows: Notes payable
$188,000.00
Accounts payable **
12,150.70
Accrued expenses 10.00
Total
$200,160.70
*325 Petitioner appears to contend that the excess of liabilities over assets should be considered as a loss. We disagree. His liability qua shareholder for Exploration's liabilities was limited to the fair market value of the assets received in liquidation. La. Rev. Stat. of 1950, sec. 12.27 subparagraph B (incorporated into sec. 12.93, subparagraph D, by Acts 1968, No. 105, sec. 1); Collins v. Richland Aviation Service, Inc., 225 So. 2d 241 (La. App., 2d Cir., 1969); Fudickar v. Inabnet, 176 La. 777, 146 So. 745 (1933). But until those assets were actually used in payment of those liabilities, petitioner, who was on a cash basis, can claim no loss. Cf. Nat Harrison Associates, Inc., 42 T.C. 601, 625 (1964). To be sure, petitioner was personally liable on the notes payable but this was by virtue of his personal guaranty, which he had given prior to and independently of the liquidation. This guaranty of payment was merely a promise to pay and is, in and of itself, insufficient to support petitioner's deduction. Alfred R. Bachrach, 18 T.C. 479 (1952), affirmed per *326 curiam, 205 F. 2d 151 (C.A. 2, 1953); cf. Helvering v. Price, 309 U.S. 409 (1940); Eckert v. Burnet, 283 U.S. 140, (1931); W. L. Dunn, 14 B.T.A. 13 (1928). Clearly, the liquidation of Exploration per se did not constitute payment under the guaranty. Finally, we note that petitioner's basis in Exploration for the purpose of computing loss was zero, since it is stipulated that the stock was worthless at the time petitioner acquired it by gift from his father; in a tax sense, therefore, he cannot be said to have suffered any loss with 99 respect to that stock. Sections 1015, 1001, 1002, 331. Thus, the first prong of petitioner's contention must be rejected. We next address ourselves to the transfer of the assets and liabilities of Petroleum and Exploration to Marlin against credits to petitioner's account. Upon the liquidation of the two corporations, petitioner received assets having fair market values as follows: Petroleum
Exploration
Cash
$ 3,865.57
$ 90.11
Utility deposits
120.00
Accounts receivable
*** 25,486.78
**** 2,140.23
Inventories
2,099.84
Prepaid insurance
2,237.44
1,488.14
Investments
4,257.12
9,493.21
Fixed assets (after de- ducting depreciation reserve) 56,002.85
147,899.99
Total
$94,069.60
$161,111.68
*327 The assets of Petroleum were taken subject to liabilities of $7,025.38 and, as has been previously pointed out, the assets of Exploration were taken subject to liabilities of $200,160.70. Petroleum was liquidated under section 333 and petitioner reported a gain of $41,244.22 with respect thereto on his 1960 return. Under section 334(c), petitioner's basis for the non-cash assets received became the basis of his stock in Petroleum, which, in the absence of other proof, we will accept as being the amount shown under the heading "Capital Stock" on Petroleum's books, to wit, $56,500, less the amount of cash received, to wit, $3,865.57, increased by the $41,244.22 gain which was recognized. The petitioner's basis for the assets received other than cash thus became $93,878.65, or an amount only slightly less than the fair market values of the assets themselves. Under section 334(a), the basis of the assets received in the liquidation of Exploration became their fair market value, to wit, $161,111.68. Since *328 we have no evidence that petitioner assumed any of the $7,025.38 unsecured liabilities of Petroleum, we need not consider the problems involved in determining whether those liabilities should be taken into account in determining basis under section 344(c). Compare Ford v. United States, 311 F. 2d 951 (Ct. Cl. 1963); sec. 1.334-2 Income Tax Regs.; Rev. Rul. 95, 1953-1 C.B. 162; see 3A Mertens, Law of Federal Income Taxation (1968 revision) sec. 21.173. Compare also Cooper, "Negative Basis," 75 Harv. L. Rev. 1352 ( 62). Thus, petitioner transferred assets to Marlin having an aggregate basis to him of $254,870.61. [7] These assets were subject to aggregate liabilities, which Marlin assumed, totalling $207,186.08. Against this transfer, a debt of petitioner to Marlin in the sum of $31,700 was cancelled and petitioner was credited by Marlin with the further sum of $16,295.20. Thus, petitioner received a benefit of $47,995.20 and, in addition, Marlin assumed liabilities amounting to $207,186.08, or a total benefit of $255,181.28. When we compare this with the $254,870.61 basis, we cannot see how petitioner suffered any *329 loss. Apparently, petitioner seeks to treat the transfer to Marlin as simply a transaction whereby he supplied Marlin with some $250,000 in asset value to be used to pay off some $200,000 in liabilities with the excess asset value constituting a deductible loss. Not only does this view ignore the fact that petitioner converted a debt of $31,700 owed by him to Marlin into a debt of $16,295.20 owed by Marlin to him, but it also ignores the facts that there is no evidence that the debts were in fact paid off and that at least $188,000 of the indebtedness remained extant, with petitioner continuing to be liable thereon by virtue of executing a new guaranty. Compare Santa Anita Consolidated, Inc., 50 T.C. 536 (1968). Indeed, even on petitioner's theory of the transactions, he would appear to have realized a gain but *330 respondent has made no claim with respect thereto. In view of the foregoing, we need not involve ourselves in the question whether, because petitioner was the owner of all the outstanding stock of all three corporations, the liquidation of Petroleum and Exploration followed immediately by the transfer to Marlin constituted a reorganization under section 368(a)(1)(D), in accordance with respondent's alternative argument. Cf., e.g; South Texas Rice Warehouse Co., 43 T.C. 540 (1965), affirmed in part and reversed in part sub nom. Davant v. Commissioner, 366 F. 100 2d 874 (C.A. 5, 1966). Compare Mark E. DeGroff, 54 T.C. 59 (1970), on appeal (C.A. 10, Apr. 24, 1970), with William C. Kind, 54 T.C. 600 (1970). [8] We recognize that if the transactions were held to constitute a (D) reorganization, petitioner may well have erroneously reported a gain in 1960 from the liquidation of Petroleum, but that year is not before us, except insofar as it affects petitioner's capital loss carryover to 1961, and, in any event, petitioner has argued against the presence of a reorganization, suggesting only that it is unfair to deny him a loss from the liquidation *331 of Exploration when he had a gain from the liquidation of Petroleum - a suggestion that is utterly without substance since petitioner suffered no loss either in a tax sense or in an economic sense. Decision will be entered for the respondent. Footnotes
1. All references herein are to the Internal Revenue Code of 1954, as amended.↩
2. This figure represents the dollar value of the combined assets and liabilities of Petroleum and Exploration after accounting for the accounts payable which were cancelled but does not reflect any adjustment of the accounts payable retained by petitioner. See p. 5, supra. Hence, it appears petitioner's account was erroneously credited with $3,985.29.↩
3. Petitioner also reported a short-term capital gain of $794.14 which reduced his net loss to $53,674.88. In 1962, petitioner sought and received a tentative carryback adjustment to 1959, pursuant to section 6411, based on his claim that he suffered a net operating loss for his 1961 taxable year. He received a refund of $23,943.27 of tax previously paid with respect to his taxable year 1959. Subsequent to petitioner's receipt of the refund, petitioner's books for 1960 and 1961 were examined by an internal revenue agent. At the time of this first examination, both 1960 and 1961 were open years. No deficiencies were asserted at that time. A second examination of petitioner's 1961 records was conducted some fourteen months later, after the statute of limitations for 1960, but not for 1961, had expired. A series of agreements were signed by petitioner extending the time in which respondent could assess a deficiency with respect to petitioner's 1961 taxable year to June 30, 1967. The statutory notice upon which this proceeding is based was mailed on June 14, 1967. In this notice, respondent adjusted petitioner's net operating loss for the taxable year 1961 by eliminating the capital loss carryforward from the taxable year 1960. The specific amount carried forward and which respondent claims should be disallowed is $49,068.52, reducing the claimed 1961 net operating loss from $82,624.71 to $33,556.19, all of which would be consumed by a carryback to the taxable year 1958.
[4]↩
5. See also Stephen J. Hajos, T.C. Memo. 1964-328; Clarence J. Simon, T.C. Memo. 1960-34↩.
6. In the case of depreciable assets, we have deducted the depreciation reserve as shown on the books.↩
*. Eliminating the $80 debt from petitioner which was cancelled.↩
**. Eliminating $3,000 owed to Petroleum which was cancelled.↩
***. Eliminating $3,000 owed to Petroleum by Exploration and $7,700 owed by petitioner, which were cancelled. ↩
****. Eliminating the $80 debt from petitioner, which was cancelled.↩
7. Consisting of $3,865.57 (the basis of the cash received from Petroleum) plus $93,878.65 (basis of the non-cash assets received in the liquidation of Petroleum) plus the $161,111.68 (basis of the assets, including $90.11 in cash received on the liquidation of Exploration) less an aggregate of $3,985.29 accounts payable of Marlin retained by petitioner.↩
8. Similarly, we have not considered the extent to which the transfer of assets and liabilities from petitioner to Marlin could be treated as a transfer under section 351 or as a contribution to capital. Compare, Werner Abegg, 50 T.C. 145, 161-164 (1968), aff'd 429 F. 2d 1209, 1215-1218 (C.A. 2, 1970); George Whitney, 8 T.C. 1019, 1035-1036 (1947), affirmed in part and reversed in part 169 F. 2d 562↩(C.A. 2, 1948).