[No. 19543.   Department One.—July 29, 1895.]

## CHARLES S. HAMILTON, RESPONDENT, v. COUNTY OF SAN DIEGO ET AL., APPELLANTS.

SCHOOL DISTRICT—CORPORATION DE FACTO—ORGANIZATION BY SUPERVISORS IN UNKNOWN CITY LIMITS—TAXES PAID FOR BONDS NOT RECOVERABLE—NEW SCHOOL DISTRICT.—Where a school district established by the supervisors was in fact within the territorial limits of a city, though supposed, in good faith, to be without its limits, and the district so organized exercised the powers and discharged the duties of a school district in the same manner as if its organization had been legally perfected, to the exclusion of any other school district, with the acquiescence of the city school district, and of the county and state authorities, and assumed corporate powers and privileges, and taxes were levied and collected, apportioned and expended in its behalf in like manner as other school districts, and the owners of property included in the district recognized its corporate existence by paying taxes for its use, such school district is a corporation *de facto*, whose existence cannot be collaterally impeached; and the taxpayers cannot recover back the taxes paid by them into its bond and interest fund; nor is a new school district thereafter regularly established entitled to any of the funds collected for the payment of the principal and interest of the bonds of the school district *de facto*, but the holders of the bonds are entitled to the taxes paid into the bond and interest fund, to the exclusion of the taxpayers and of the new district.

APPEAL from a judgment of the Superior Court of San Diego County and from an order denying a new trial.   GEORGE PUTERBAUGH, Judge.

The facts are stated in the opinion.

*District Attorney M. L. Ward,* for County of San Diego, Appellant.

The Coronado school district was a *de facto* district, and the court erred in finding otherwise. (*Quint* v. *Hoffman,* 103 Cal. 506; *Dean* v. *Davis,* 51 Cal. 411; *Rec-*

*lamation Dist.* v. *Gray,* 95 Cal. 601; *Swamp Land Dist.* v. *Silver,* 98 Cal. 53; *School Dist. No. 2* v. *School Dist. No. 1,* 45 Kan. 543; *Atchison etc. R. R. Co.* v. *Wilson,* 33 Kan. 223; *State* v. *Central Pac. R. R. Co.,* 21 Nev. 75; *Coler* v. *Dwight School Tp.,* 3 N. Dak. 249; *Keweenaw Assn.* v. *School Dist. No. 1,* 98 Mich. 437; *Fractional School Dist.* v. *School Inspectors,* 27 Mich. 3; *Clement* v. *Everest,* 29 Mich. 19; *Stuart* v. *School Dist.,* 30 Mich. 69; *In re Wetmore,* 99 Cal. 146; Cooley on Taxation, 2d ed., 73, 768, 809, 821, 822, note at foot; *Coe* v. *Gregory,* 53 Mich. 19; *Stockle* v. *Silsbee,* 41 Mich. 615; *Bird* v. *Perkins,* 33 Mich. 28.) The corporate existence of the district cannot be questioned collaterally, nor can taxes voluntarily paid therefor be recovered back. (*Trumbo* v. *People,* 75 Ill. 561; *Renwick* v. *Hall,* 84 Ill. 163; *People* v. *Newberry,* 87 Ill. 41; *School Directors etc.* v. *School Directors,* 135 Ill. 464; *Quint* v. *Hoffman, supra; Reclamation Dist.* v. *Gray, supra; Swamp Land Dist.* v. *Silver, supra; In re Wetmore, supra;* Cooley on Taxation, 2d ed., 73, 768, 809, 821, 822, note at foot.) The same rule that recognizes the rights of officers *de facto* recognizes corporations *de facto.* (*Clement* v. *Everest, supra.*)

*Parrish & Mossholder,* for Coronado School District, Intervenor, Appellant.

The taxpayers cannot recover back money voluntarily paid for taxes. (*Dear* v. *Varnum,* 80 Cal. 89; *Cooper* v. *Chamberlin,* 78 Cal. 450; *Maxwell* v. *San Luis Obispo,* 71 Cal. 466; *Brumagim* v. *Tillinghast,* 18 Cal. 271; 79 Am. Dec. 176; *Garrison* v. *Tillinghast,* 18 Cal. 404, 408; *Bucknall* v. *Story,* 46 Cal. 596; 13 Am. Rep. 220; *Sonoma County Tax case,* 13 Fed. Rep. 790; *McMillan* v. *Richards,* 9 Cal. 417; 70 Am. Dec. 655; *Bank of Woodland* v. *Webber,* 52 Cal. 73; *De Baker* v. *Carillo,* 52 Cal. 475; *Bank of Santa Rosa* v. *Chalfant,* 52 Cal. 170; *Wills* v. *Austin,* 53 Cal. 178; *Merrill* v. *Austin,* 53 Cal. 379; Cooley on Taxation, 2d ed., 809–11.) The money should be used for the education of the youth of the territory known as Coronado Beach, under the doctrine of *cy pres,*

and the demurrer of the intervenor should not have been overruled. (*United States* v. *Church,* 6 Utah, 9; 2 Story's Equity Jurisprudence, secs. 1167–70 *a; Heuser* v. *Harris,* 42 Ill. 425; *Gilman* v. *Hamilton,* 16 Ill. 225; *Estate of Hewitt,* 94 Cal. 378; *Estate of Hinckley,* 58 Cal. 511; *Russell* v. *Allen,* 107 U. S. 163.) It was not necessary that Coronado school district should be lawfully created at the time the money was paid into the county treasury. (2 Story's Equity Jurisprudence, secs. 1169–70 *a; Russell* v. *Allen, supra.*) All money held for public purposes is held as a charitable use, and the laws governing charitable uses apply. (*Perin* v. *Carey,* 24 How. 506; Story's Equity Jurisprudence, sec. 1165.)

*E. W. Hendrick,* and *A. C. Younkin,* for Respondent.

Payment is not voluntary when made under mistake of fact, and such payment may be recovered back. (*Baltimore etc. R. R. Co.* v. *Faunce,* 6 Gill, 68; 46 Am. Dec. 655; *Citizens' Bank* v. *Grafflin,* 31 Md. 520; 1 Am. Rep. 66; *Kelly* v. *Solari,* 9 Mees. & W. 54; *Pooley* v. *City of Buffalo,* 4 N. Y. Supp. 450; Dillon on Municipal Corporations, 945, 946; 2 Pomeroy's Equity Jurisprudence, sec. 856; *Mayer* v. *Mayor etc.,* 63 N. Y. 455; *Walker* v. *Conant,* 65 Mich. 194; *Brown* v. *College Corner etc. Co.,* 56 Ind. 110, and cases cited; Dillon on Municipal Corporations, 945, 946; Civ. Code, secs. 1712, 1713, 2224; *Hayes* v. *Los Angeles County,* 99 Cal. 77; *Indianapolis* v. *McAvoy,* 86 Ind. 590; *Chapman* v. *Brooklyn,* 40 N. Y. 380; 2 Chitty on Contracts, 7th ed., 462; *Los Angeles County* v. *Los Angeles City,* 65 Cal. 480; *Kreutz* v *Livingston,* 15 Cal. 347; *Argenti* v. *San Francisco,* 16 Cal. 255; *Louisville* v. *Anderson,* 79 Ky. 334; 42 Am. Rep. 221; *Talbot* v. *National Bank,* 129 Mass. 69; 37 Am. Rep. 302; *Koontz* v. *Central Nat. Bank,* 51 Mo. 275; *Waite* v. *Leggett,* 8 Cow. 195; 18 Am. Dec. 441; Dillon on Municipal Corporations, 4th ed., secs. 945, 946; *Pitcher* v. *Turin Plank Road Co.,* 10 Barb. 437; *Noble* v. *Bullis,* 23 Iowa, 560; 92 Am. Dec. 442; *Louisville* v. *Henning,* 1

Bush, 381; *City of Covington* v. *Powell*, 2 Met. (Ky.) 226.)
An illegal tax levied or collected without jurisdiction
may be recovered back.    (*Kerr* v. *Butz*, 34 Ill. App. 220;
*Newman* v. *Board of Supervisors*, 45 N. Y. 676; *Sumner*
v. *First Parish of Dorchester*, 4 Pick. 364; Pol. Code, sec.
3804; *Hayes* v. *Los Angeles County, supra; Bank of Com-
monwealth* v. *Mayor*, 43 N. Y. 189; *Grand Rapids* v.
*Blakely*, 40 Mich. 367; 29 Am. Rep. 539; *Joyner* v. *Third
School Dist.*, 3 Cush. 569; *Union Nat. Bank* v. *Mayor
etc.*, 51 N. Y. 638; *Indianapolis* v. *McAvoy*, 86 Ind. 587;
*Shoemaker* 'v. *Grant County*, 36 Ind. 175; *Mills* v. *Hen-
dricks County*, 50 Ind. 436; *Woolley* v. *Staley*, 39 Ohio St.
354; *Galveston* v. *Sydnor*, 39 Tex. 236; *Marshall* v. *Sned-
iker*, 25 Tex. 460; 78 Am. Dec. 534; *Baker* v. *Panola
County*, 30 Tex. 86; *Lauman* v. *County of Des Moines*, 29
Iowa, 310; *Iowa etc. Land Co.* v. *Woodbury County*, 64
Iowa, 213; *George's Creek etc. Co.* v. *County Commrs.*, 59
Md. 255; *Indianapolis* v. *McAvoy, supra.*)    There was
neither a *de jure* nor a *de facto* corporation, there being
no semblance of authority for its existence.    (Pol. Code,
secs. 1576, 1583; *Bay View School Dist.* v. *Linscott*, 99
Cal. 28; Dillon on Municipal Corporations, 3d ed., sec.
290; *Decorah* v. *Bullis*, 25 Iowa, 12; *Norton* v. *Shelby
County*, 118 U. S. 425; *Hildreth* v. *M'Intire*, 1 J. J.
Marsh. 206; 19 Am. Dec. 61; *Welch* v. *Sie. Genevieve*, 1
Dill. 130; *Mokelumne Hill Min. Co.* v. *Woodbury*, 14 Cal.
425; 73 Am. Dec. 658; *People* v. *Toal*, 85 Cal. 333; *Oro-
ville etc. R. R. Co.* v. *Plumas County*, 37 Cal. 354; *People*
v. *White*, 24 Wend. 520, 540, 541; *Carleton* v. *People*, 10
Mich. 250; *Mayor etc* v. *Territory*, 1 Okl. 188; *Evenson* v.
*Ellingson*, 67 Wis. 634.)    There cannot be two munici-
pal corporations at the same time within the same ter-
ritory.    (Dillon on Municipal Corporations, 184; *Pater-
son* v. *Society etc.*, 24 N. J. L. 385; *Drain Commrs.* v.
*Baxter*, 57 Mich. 130; *Strosser* v. *Fort Wayne*, 100 Ind.
443–51; *Taylor* v. *Fort Wayne*, 47 Ind. 274.)    The doc-
trine of *cy pres* has no application to this case, the tax-
payers never having dedicated the money for charitable

purposes. (3 Am. & Eng. Ency. of Law, 133; Perry on Trusts, secs. 717, 729.)

BRITT, C.—Coronado Beach, formerly known as the peninsula of San Diego, was for several years the subject of dispute as to whether it was within or without the territorial limits of the city of San Diego. A decision of the former district court, rendered in the year 1877, held it to be no part of such city; from the judgment in that case—not entered until eleven years later —an appeal was taken to this court, where the judgment was reversed, and it was determined that said peninsula is "within the limits of the city of San Diego, and land situated on said peninsula is subject to assessment and taxation for city purposes." (*San Diego* v. *Granniss*, 77 Cal. 511.) This was in December, 1888. The question arose in other forms (*People* v. *San Diego*, 85 Cal. 369; *Fisher* v. *Police Court*, 86 Cal. 158); but the case of *San Diego* v. *Granniss, supra*, remained authoritative as to the legal questions decided—not to say the points of local geography involved—and established that the peninsula was, and had been since the passage of the act to reincorporate the city of San Diego, April 1, 1876, an integral part of the city.

The present case grew out of that controversy. In January, 1887, the peninsula being then regarded as without the limits of the city, the board of supervisors of San Diego county took the proper formal steps for the organization of a school district comprising that portion of the peninsula called Coronado Beach, South Island, under the name of "Coronado school district of San Diego county." And the case shows that from and after January 10, 1887, during a period of some four years, the said so-styled Coronado school district (although Coronado Beach, South Island, was wholly within the boundaries of the city of San Diego, in said county, and was part of the territory of the San Diego school district, constituted by said city), assumed to exercise and did exercise all the powers and franchises and dis-

charge the duties of a school district organized under the laws of the state of California, . . . . exclusive of any other school district, and had an acting board of three persons, who assumed to be its board of trustees. That, among other things, up to December 12, 1888, it received and expended apportionments of state and county school moneys on the same basis with other school districts established within said county, employed teachers, maintained public schools out of said moneys within and for such district; and on November 14, 1887, at an election, in which were followed the forms of law, the qualified electors therein assumed to authorize the issue of bonds of said district, to the amount of $40,000, for the purpose of purchasing a site for a school-building, and building a schoolhouse thereon; that pursuant to the result of said election the board of supervisors of said county issued the bonds of said district to the amount of $38,000, and caused the same to be sold at par; that the proceeds were applied to the purchase of land and the erection of a schoolhouse thereon, within said assumed district, and such land was conveyed by deed to the district. And thereafter, in each of the years 1888, 1889, and 1890, the said board of supervisors, at the time of making the levy of taxes for county purposes, levied a tax upon the property within said so-styled Coronado school district, sufficient to pay the interest on the said bonds, and such portion of the principal of said bonds as was to become due during the year in which such levy was made. Of the taxes so levied the sum of $5,412.66 was collected and paid into the county treasury; and of this amount the sum of $700 was paid out for interest on said bonds, and $4,712.66 is yet in the hands of the county treasurer—defendant Long. Plaintiff owned property within said Coronado school district, and paid the taxes for the years 1888 and 1889, levied as above shown. He prosecutes this action to recover the sums paid by him, and also the sums paid for the same purposes and under the same circumstances prior to December 31, 1890, by numer-

ous other owners of property within such district; they having assigned to him their respective claims therefor. The court found that plaintiff and his assignors did not discover that said Coronado Beach was parcel of the San Diego school district until the month of August, 1893.

There was a complaint in intervention filed by a new "Coronado school district," alleging, among other matters, that on October 16, 1890, the territory included within said former so-called Coronado school district was regularly segregated and excluded from the city of San Diego and from said San Diego school district; that thereafter the territory so excluded was incorporated into and named the City of Coronado, and a new school district was thereby formed, now known and described as "Coronado school district"—the intervenor. We may suppose that the exclusion of such territory was accomplished in virtue of the proceedings required by the judgment in *People* v. *San Diego*, 85 Cal. 369. Said intervenor further alleged "that said intervening school district is the successor of said first-described Coronado school district, and, as such, is the owner of, and is entitled to, the use of said money deposited in the county treasury," and prayed that the court "decree that, since said money cannot be applied to the purpose for which it was paid in, that it be applied as nearly as possible to such purposes, to wit, paying for schoolbuildings for said intervening school district." The court sustained a demurrer to the complaint of the intervenor on the grounds that it had no interest in the matter in litigation, and for want of facts to constitute a cause of action against any of the other parties, and dismissed its complaint. Plaintiff recovered judgment, directing that the amount claimed by him and costs "be paid out of the special so-called fund known as the Coronado school bond and interest fund." Defendants appeal from the judgment and an order denying a new trial, and the intervenor appeals from the judgment dismissing its complaint.

A school district is a corporation organized for educational purposes (*Estate of Bulmer*, 59 Cal. 131); and, as the law stood in 1887, " each county, city, or incorporated town, unless subdivided by the legislative authority thereof, forms a school district." (Pol. Code, sec. 1576.) By sections 1577 to 1579 of the same code the county board of supervisors was clothed with the power to establish new school districts within the county. It is contended by defendants that these sections construed together gave to the board of supervisors power which it regularly exercised in the erection of Coronado Beach into a separate school district by the proceedings taken in January, 1887; that, failing this proposition, such district was at least a corporation *de facto*, whose existence cannot be assailed in this collateral manner; while, in the view of plaintiff, the only power to create the Coronado school district in the year 1887 resided, under said section 1576, in the municipal governing body of the city of San Diego—its city council, and the attempt of the county board of supervisors in that behalf " could not be even such a semblance of authority as would give it a *de facto* existence." We shall assume, for the purposes of the decision, that the power under the statute to form the new district rested in the city council, and not in the board of supervisors.

We are to inquire if there was such an attempt to impress the character of a corporation upon the Coronado school district, followed by the assumption and discharge on its part of the duties pertaining to such district, as to bring it within the operation of those principles of public policy by reason of which the law will impute to it for some purposes the status of a lawful corporation, that is, will treat it as a corporation *de facto*. 1. In the first place, although a part of the district composed of the city of San Diego, yet it was legally capable of segregation as an independent district. (Pol. Code, sec. 1576.) 2. The board of supervisors of the county was a body having power under the law to organize new school districts in San Diego county. The respondent says the

order of the board was of no more moment than if made by the Czar of Russia; but the illustration is not apt; a foreign government having no authority whatever within our borders could make no order in such a matter which would not be void on its face; while here the order of the board of supervisors—acting as the board did within the lines of the statute (Pol. Code, secs. 1577–79)—was valid on its face, and only invalid because of the fact, then unknown, that the territory in question was within the limits of an incorporated city; the case shows affirmatively that it was believed to be and was dealt with as if outside those limits.   3. The order purported to form and establish into a school district the said territory, with a designated name, in formal compliance with the statute prescribing the mode for accomplishing that object.   4. Thereafter the district so organized exercised the powers and discharged the duties of a school district in the same manner as if its organization had been legally perfect; contracted debts and acquired and held property in its corporate name for the public purposes it undertook to promote.   5. This was done to the exclusion of any other district; that is, no other district maintained a school or performed other office of such a corporation within its confines—the district of San Diego having abdicated its functions, at least not attempting to discharge them within those limits; had both districts been endeavoring to exercise the same powers in the same territory a different question would be made. (1 Dillon on Municipal Corporations, sec. 184.)   6. There was acquiescence not merely by the San Diego school district but by the county and state in the assumption of such corporate prerogatives by the new district; the county officers levied and collected taxes in its behalf, and there was apportioned to it, and it expended school moneys of both the county and state in like manner as other school districts in the county.   7. The plaintiff here and his numerous assignors, owners of property included within the district, recognized its corporate existence by paying taxes for its use in discharging the

debts it had incurred. True they did this, as the court finds, under a mistake as to the legal creation of the district, but that is immaterial; well nigh every merely *de facto* corporation is the result of the omission or mistake of somebody or some body of people.

We are of opinion that the district had a *de facto* existence. In the elements above enumerated we see nothing wanting to give the color of legality to its organization, or to render it impolitic to allow the collateral impeachment of such existence. The same rule which recognizes officers *de facto* applies to corporations *de facto* (*Clement* v. *Everest*, 29 Mich. 20); it is one of policy—to prevent public confusion and private injustice; and it seems to be settled that one assuming to act as a public officer may in some cases be such *de facto,* although he has not color of election or appointment by the only body which has power to elect or appoint him, and although the appointing or electing body under which he assumes to act had not the legal power. (*State* v. *Carroll*, 38 Conn. 449; 9 Am. Rep. 409; 5 Am. & Eng. Ency. of Law, 103.) The order of the board of supervisors purporting to create the district was the formal exercise of legislative power (*Hughes* v. *Ewing*, 93 Cal. 417); and thereunder every thing having been done to constitute the district a corporation colorably, if not legally, the law, as we see it, refuses in this incidental way, to declare all its proceedings void. (*Attorney General* v. *Stevens*, 1 N. J. Eq. 378; 22 Am. Dec. 526.)

The constitution of Tennessee provided that no line of any new county created by the legislature should approach nearer than eleven miles of the courthouse of any existing county. An act was passed forming a new county, under which one of the lines was established within the prohibited distance, but this circumstance did not appear on the face of the act; it was therefore on its face not unconstitutional. The new county collected taxes and exercised other jurisdictional rights up to the line so fixed. *Held*, that, so long as the older county acquiesced in the boundary which cut off part of

its territory, the right of the new county over such terri-
tory could not be questioned in any collateral proceed-
ing; that only the older county could assert the invalidity
of the boundary. (*Speck* v. *State*, 7 Baxt. 46.) A some-
what similar case received like treatment in Kansas;
the court, citing many authorities, said: "When a pub-
lic organization of a corporate or *quasi* corporate char-
acter has an existence in fact and is acting under color
of law, and its existence is not questioned by the state,
its existence cannot be collaterally drawn in question by
private parties." (*In re Short*, 47 Kan. 253.) In Mich-
igan it was sought to review by *certiorari* the proceed-
ings taken to form a new school district out of old
districts; this was about fifteen months after the pro-
ceedings were had; the court held that, after lapse of
such time, it was presumed that the district had been
organized in fact, officers elected, and expenses incurred;
that any one desiring to contest the organization must
proceed by *quo warranto* against the district or its officers.
(*Fractional Dist. No. 1* v. *School Inspectors, etc.*, 27 Mich.
3; see *Stuart* v. *School District*, 30 Mich. 74.) In Arkan-
sas, by mistake as to the tribunal having authority for
such purposes, a town was formally organized by order
of the circuit court of a certain county when in fact it
had no jurisdiction in the matter; otherwise the organ-
ization was in accordance with the general law, and for
several years the town continuously exercised the fran-
chises of a corporation; it was conceded that the order
was void; yet the supreme court held that the town
" had been an existing *de facto* corporation all the time
from 1873 till now; and many things had in good faith
been done under it which it would be shocking now to
undo." (*State* v. *Leatherman*, 38 Ark. 81; see further,
*Ashley* v. *Board of Supervisors*, 60 Fed. Rep. 55; *Aller* v.
*Town of Cameron*, 3 Dill. 198; *School Dist. No. 2* v. *School
Dist. No. 1*, 45 Kan. 543; *City of St. Louis* v. *Shields*, 62
Mo. 247; *People* v. *Maynard*, 15 Mich. 463; Cooley on Con-
stitutional Limitations, 310.) Respondent lays much
stress on *Bay View School Dist.* v. *Linscott*, 99 Cal. 25;

but that case does not touch the present question; we have assumed the correctness of the remark there, that "after the incorporation of the city the board of supervisors ceased to have any power over the school districts within the city."

Since the Coronado school district had a *de facto* existence the plaintiff could not have enjoined the collection of the taxes, nor have resisted an action for the same, on the ground of illegality of its organization (*Quint* v. *Hoffman,* 103 Cal. 506; *Dean* v. *Davis,* 51 Cal. 406; *Reclamation Dist.* v. *Turner,* 104 Cal. 334; *Swamp Land Dist.* v. *Silver,* 98 Cal. 51); and for reasons at least as strong should not recover the money when paid. It follows also that the intervenor has no standing to claim the money in dispute. Under section 1887 of the Political Code the taxes when collected were required to be " paid into the county treasury to the credit of such district, and be used for the payment of the principal and interest of said bonds, and for no other purpose"; and, whether the holders of the bonds have any further remedy on the same or not, a subject on which we intimate no opinion, it seems to us clear that on the facts disclosed by the present record they are entitled to the fund in question to the exclusion of both the plaintiff and the intervenor. The judgment dismissing the intervenor's complaint should be affirmed, and the judgment against the defendants and the order denying their motion for new trial should be reversed.

SEARLS, C., and BELCHER, C., concurred.

For the reasons given in the foregoing opinion the judgment dismissing the intervenor's complaint is affirmed and the judgment against the defendants and the order denying their motion for new trial are reversed.

GAROUTTE, J., HARRISON, J., VAN FLEET, J.