[L. A. No. 23480. In Bank. May 10, 1955.]

SOUTHWEST EXPLORATION COMPANY (a Corporation), Appellant, v. COUNTY OF ORANGE et al., Respondents.

[L. A. No. 23481. In Bank. May 10, 1955.]

SIGNAL OIL AND GAS COMPANY (a Corporation), Appellant, v. COUNTY OF ORANGE et al., Respondents.

C. LaV. Larzelere, H. F. Clary, Paul S. Ottoson, A. E. Stebbings, Sheppard, Mullin, Richter & Balthis, James C. Sheppard and Cameron W. Cecil for Appellants.

Joel E. Ogle, County Counsel, Stephen K. Tamura, Deputy County Counsel, and C. A. Bauer, City Attorney (Huntington Beach), for Respondents.

SCHAUER, J.—These two actions, consolidated for trial, were brought by plaintiffs against the County of Orange and the City of Huntington Beach to recover 1951-1952 city taxes levied on plaintiffs' leasehold interests in state-owned tide and submerged lands sought to be annexed by the city in 1950. Judgments of dismissal were entered upon the sustaining, without leave to amend, of demurrers to the complaints, and plaintiffs appeal. We have concluded that plaintiffs have stated a cause of action for recovery under one of their theories of attack on validity of the tax levy, that determination of their other theory, if it becomes necessary to adjudicate it, should await final disposition of pending quo warranto proceedings attacking the attempted annexation, that a limitations statute relied upon by defendants does not bar plaintiffs' actions, that the county is a proper party defendant, and that the judgments should be reversed.

Each complaint is framed in two causes of action, one for refund of taxes paid after rejection of a claim for refund under section 5103 of the Revenue and Taxation Code, and the other for recovery of taxes paid under protest under the provisions of section 5138 of the same code. The controversy revolves around proceedings by which defendant city purported to annex some nine square miles of ocean area lying northwest of the city boundaries, and the validity of tax assessments by the city upon plaintiffs' leasehold interests. According to the allegations of the complaints, the annexation proceedings were initiated by the city council on its own

motion, were conducted under the provisions of the Annexation of Uninhabited Territory Act of 1939 as amended (Gov. Code, §§ 35300-35326), and were purportedly completed on April 5, 1950. On July 3, 1950, an action in the nature of quo warranto, brought in the name of the People and prosecuted by the attorney general and by attorneys for the relator (one of the plaintiffs herein), was filed to test the validity of the annexation. These two tax actions were filed in May, 1952. Trial of the quo warranto action was had in February, 1953, and on February 27 the court rendered judgment for defendant city. On the same day the same court sustained the demurrers of defendants city and county in these tax actions, without leave to amend, and judgments of dismissal followed. Plaintiffs filed notices of appeal. Thereafter an order granting a new trial in the quo warranto matter was entered and was affirmed on appeal[1] (*People* v. *City of Huntington Beach* (1954), 128 Cal.App.2d 452 [275 P.2d 601]), and counsel agree that such action is still pending.

### Plaintiffs' Theories of Recovery

Plaintiffs first attack validity of the taxes upon the ground that the city failed to file with the Orange County assessor the statement of the change of boundaries, together with map or plat showing the change, on or before February 1, 1951, under provisions of sections 54900 to 54903 of the Government Code.[2] In this connection it appears from the complaints that the taxes in question in these actions are the first taxes sought to be assessed by defendant city on the property involved, and that the assessments were made sometime be-

---

[1] On technical grounds, not material to attack on validity of the annexation proceedings.

[2] At the time of the tax levy those sections provided:

Section 54900: "When there is a change in boundaries of a city or district authorized to levy and collect property taxes or assessments according to the value assessed by the county or city assessor or State Board of Equalization and whose tax levy is carried on the regular county assessment roll or when any such city or district is created, the tax or assessment levying authority of the city or district shall file or cause to be filed a statement of such creation or change."

Section 54901: "The statement shall set forth the legal description of the boundaries of the city or district created or changed and a map or plat indicating the boundaries."

Section 54902: "On or before February 1st of the year in which the assessments or taxes are to be levied, the statement and map or plat shall be filed with each assessor whose roll is used for the levy and with the State Board of Equalization."

Section 54903: "The creation of any city or district or the change in its boundaries is not effective for assessment or taxation purposes unless the statement and map or plat is filed pursuant to this article."

tween the first Monday in March and the first Monday in July, 1951—some eight to twelve months after the quo warranto action was filed and approximately one year after completion (in April, 1950) of the annexation proceedings. The assessments were made by defendant County of Orange on behalf of defendant city under the provisions of an ordinance whereby the city elected to have all city property taxes assessed, equalized, and collected by the county assessor (see Gov. Code, §§ 51330, 51334, 51541, 51542), and the Orange County assessor's roll was the roll used for the assessment and levy here in question. Plaintiffs allege on information and belief that no statement or map or plat showing the change in lines purportedly effected by the annexation was filed with the Orange County assessor on or before February 1, 1951, although thereafter certain copies of the annexation ordinance were mailed to such assessor and certain maps of the boundary change were mailed to him on February 28, 1951, and on May 10, 1951; the first of the maps was lost and neither the copy of the ordinance nor the statement and map contemplated by sections 54900 to 54903 of the Government Code, was ever filed with the county assessor.

The provisions of sections 54900 to 54903 were formerly found in section 3720 of the Political Code. The attorney general of this state has repeatedly and consistently ruled that "a strict compliance with Section 3720 . . . [is] required as a condition precedent to the formation or change of boundaries of a local district or city" (5 Ops. Atty. Gen. 259, 260, June, 1945), and that "the provisions of Section 3720 of the Political Code must be complied with on or before the first day of February if taxes are to be levied and assessed for the ensuing fiscal year." (8 Ops. Atty. Gen. 341, 343, Dec., 1946; see also 5 Ops. Atty. Gen. 243, 244-245, May, 1945.) Defendants argue, nevertheless, that no provision of the Annexation of Uninhabited Territory Act of 1939 (Gov. Code, §§ 35300-35326) requires the filing of the statement or map mentioned in sections 54900 to 54903, nor is such a filing required by sections 51330 to 51335, or sections 51540 to 51561, of the Government Code (relating to the collection of city taxes by the county for chartered cities), or by any provision of the city charter. ■ Without attempting to analyze the cited sections in detail, it appears that no provision therein, or elsewhere, exempts defendant city from the duty of filing the statement and map specified in the sections relied upon by plaintiffs, and no reason appears why such

an exemption should be implied. Indeed, the Legislature has in section 54904 expressly exempted certain sanitary districts, and it may be presumed that if other exemptions were intended they would have likewise been named.

■ Defendants also rely upon the provision of section 24 of the Revenue and Taxation Code, that "No act in all the proceedings for raising revenue by taxation is illegal on account of informality or because not completed within the required time." (See also *Buswell* v. *Board of Supervisors of Alameda County* (1897), 116 Cal. 351 [48 P. 226].) However, the allegations of the complaints are that the statement and map were never filed at all, although as already stated long held by the attorney general to be a condition precedent to the assessment and levy of taxes. Nor would the principle expressed in *Steele* v. *San Luis Obispo County* (1908), 152 Cal. 785, 787 [93 P. 1020], and *First Trust & Sav. Bank of Pasadena* v. *Los Angeles County* (1929), 206 Cal. 240, 242 [273 P. 1066] (see also *H. & W. Pierce, Inc.* v. *Santa Barbara County* (1919), 40 Cal.App. 302, 306 [180 P. 641]), that taxes paid are not recoverable on account of technical defects in the tax proceedings, appear to benefit defendants. It does not appear that the courts were there dealing with a complete failure to take a step specifically declared by statute to be essential to the effectiveness of a tax assessment. ■ Moreover, since the statute upon which plaintiffs rely was reenacted and transferred to the Government Code in 1949, as well as amended in 1951, it may be presumed that the Legislature was cognizant of the construction which had been placed thereon by the attorney general in his 1945 and 1946 opinions cited hereinabove. This is a factor which may be considered in applying the statute. (See *Coca-Cola Co.* v. *State Board of Equalization* (1945), 25 Cal.2d 918, 922 [156 P.2d 1]; *Richfield Oil Corp.* v. *Crawford* (1952), 39 Cal.2d 729, 736 [249 P.2d 600]; *Nelson* v. *Dean* (1946), 27 Cal.2d 873, 880 [168 P.2d 16, 168 A.L.R. 467]; *Wotton* v. *Bush* (1953), 41 Cal.2d 460, 468 [261 P.2d 256].)

■ We hold that plaintiffs have set forth facts in their complaints which prima facie show that the tax assessment they attack was void for failure to file the statement and map or plat and which do state a cause of action for recovery of the taxes paid.

As a second theory of recovery plaintiffs contend that although the general rule is that an annexation may be attacked

only by an action in the nature of quo warranto (see *American Distilling Co. v. City Council, Sausalito* (1950), 34 Cal.2d 660, 667 [213 P.2d 704, 18 A.L.R.2d 1247]; *Crowl v. Board of Trustees* (1930), 109 Cal.App. 214, 216 [292 P. 985]; *Coe v. City of Los Angeles* (1919), 42 Cal.App. 479, 482 [183 P. 822]), nevertheless that rule applies only to annexations having at least a de facto existence (see *Hamilton v. County of San Diego* (1895), 108 Cal. 273, 282 [41 P. 305]; *Keech v. Joplin* (1909), 157 Cal. 1, 14 [106 P. 222]; *Westlake Park Inv. Co. v. Jordan* (1926), 198 Cal. 609, 618 [246 P. 807]); that they have pleaded facts showing that the attempted annexation here involved is completely void and never had even de facto existence; and that therefore it may be attacked by this tax recovery or refund suit. In support of this contention it is urged that the complaints show that the purportedly annexed territory is not contiguous (except at a pinpoint corner) to present city uplands and so violates the Annexation of Uninhabited Territory Act of 1939 under which the annexation proceedings were had[3]; that the annexation violated the so-called "ocean boundaries" rule (see *Fraser's etc. Pier Co. v. Ocean Park Pier Co.* (1921), 185 Cal. 464, 472-473 [197 P. 328, 198 P. 212]); that it was had solely for the purpose of obtaining additional tax revenue without extending any municipal benefits or services to the area annexed; and that it was "a fraud on the law" and, therefore, was not effected in "good faith." Such showing establishes the void character of the annexation, say plaintiffs.

■ Inasmuch as the quo warranto action testing validity of the annexation is still pending for decision, it appears unnecessary and inappropriate to decide in these tax actions the sufficiency of the pleading to present an issue as to de facto existence. Even if such matter of pleading were resolved in plaintiffs' favor, the question of whether the annexation was valid and so exists de jure would remain as the point at issue in the quo warranto suit. We conclude, therefore, that determination of the right to recover the taxes under plaintiffs' second theory—i.e., their asserted right to here, in effect, attack the de jure status of the annexation proceedings, based upon their claim of lack of de facto existence—must await the outcome of the quo warranto action.

---

[3]The act provides (Gov. Code, § 35302): "The boundaries of a city may be altered and contiguous uninhabited territory annexed to, and incorporated within it, pursuant to this article."

In *McPhee* v. *Reclamation Dist. No. 765* (1911), 161 Cal. 566, 570 [119 P. 1077], it was stated that if the only remedy of a landowner "against an attempt to burden her land with assessments levied by unauthorized persons assuming without right to act as a reclamation district, is by *quo warranto*, and she is proceeding as diligently as may be to assert this remedy, she is entitled in the *interim* to the protection of a court of equity." In that case it was noted that defendant district conceded a jurisdictional defect in its organization, which was fatal to its de jure existence, and, also, this court further pointed out that in prior litigation between the same parties (*Reclamation Dist. No. 765* v. *McPhee* (1910), 13 Cal.App. 382 [109 P. 1106]) it had been finally adjudicated both that the district, although not validly organized, was a de facto corporation, and that for that reason the landowner could not collaterally question its de jure existence in a proceeding (to enforce its assessments) brought by the district prior to the institution of quo warranto proceedings. By contrast, in the present situation the validity of the annexation proceedings was attacked in a quo warranto action, brought on the relation of one of plaintiffs in these tax actions, eight to twelve months prior to assessment of the taxes, and the question of such validity, rather than being already conceded or adjudicated, remains for decision in the quo warranto action.

To summarize, we conclude: (1) Plaintiffs have stated a cause of action for recovery of the involved taxes, based upon failure to file the statement and map required by sections 54900 to 54903 of the Government Code, and the judgments must be reversed on that ground; and (2) any decision as to their asserted alternative right to recover the same taxes, based upon their claim that the annexation has had neither a de facto nor de jure existence, must (if it need ever be adjudicated) await final determination of the quo warranto action.

### Statute of Limitations

■ Defendant contends that in any event the judgments should be affirmed because the complaints show on their faces that these actions are barred by the limitations statute found in section 349½ of the Code of Civil Procedure. That section provides that "The validity of any proceedings for the annexation of territory to a municipal corporation . . . shall not be contested in any action unless such action shall have been brought within three months after the completion of such proceedings . . ." There is no merit in this contention.

Plaintiffs' theory of recovery based upon failure to file the statement and map does not contest validity of the annexation proceedings, and so does not fall within the quoted code section; and the quo warranto action, in which the questions as to validity of the annexation are to be determined, was filed within the statutory period.

*Propriety of Naming the County as a Defendant*

Defendant County of Orange demurred to plaintiffs' complaints on the further ground that, by virtue of the provisions of sections 5103 and 5138 of the Revenue and Taxation Code, these actions for recovery of city taxes could not be maintained against the County of Orange. The county now contends that the judgments dismissing the actions as against the county should be affirmed on this ground alone.

Section 5138 provides: "Within six months after the payment, an action may be brought against a county or a city in the superior court to recover the taxes paid under protest.

"If all or any portion of the taxes paid under protest and sought to be recovered were collected by officers of the county for a city, an action must be brought against the city for the recovery of such taxes and judgment must be sought against the city. Where actions are brought against both a county and a city such actions may be joined in one complaint.

"Any city for which county officers collect taxes may provide for the defense by counsel for the county of actions brought against the city under this article, in which event it shall be the duty of such counsel to defend such actions, or the city may provide that such actions shall be defended by its own counsel."

Section 5103 (added in 1941) provides, in substantially the same language, a remedy in the form of a suit to recover taxes paid, after a refund claim therefor has been rejected.

Defendant county's position is that the legislative history of section 5138 demonstrates the intention of the Legislature that the county no longer be named as a defendant where only city taxes are involved, even though collected by the county on the city's behalf. It is conceded, however, that this court has held that prior to 1937 and under the statutory predecessor of section 5138 (Pol. Code, § 3819) a suit to recover city taxes collected by the county could be brought against the county alone, without the necessity of naming the city as a party defendant. (*Los Angeles* v. *Superior Court* (1941), 17 Cal.2d 707, 711, 718 [112 P.2d

10].) In 1937 section 3819 of the Political Code was amended to require that the city "must be made a party to such suit." In 1939 the quoted phrase from section 3819 was reenacted in substantially the same language in the second paragraph of section 5138 of the Revenue and Taxation Code. In February, 1941, that paragraph was amended to further provide "and judgment shall be sought against the city." A later 1941 amendment to section 5138 added "or a city" after "against a county" in the first paragraph, changed the second paragraph to read as quoted in full hereinabove (i.e., to read that "an action must be brought against the city for the recovery of such taxes and judgment must be sought against the city"), and added the third paragraph—also hereinabove quoted in full—concerning the defense by either city or county counsel of suits to recover the city taxes.

It thus seems apparent that, as plaintiffs urge, the objective of the various statutory changes was to assure that where city taxes are involved, suits for recovery or refund will be brought against the city as well as the county and judgment will be sought against the city also rather than against the county alone, and that it was not intended to forbid naming the county as a party defendant. In *Douglas Aircraft Co.* v. *Byram* (1943), 57 Cal.App.2d 311, 317-318 [134 P.2d 15], in which plaintiff sued both the county and the city to recover both county taxes and city taxes collected by the county for the city, judgment for the entire amount in dispute was affirmed as against the county but reversed as to the city, with the statement that "The inclusion of the city . . . as a party defendant was authorized by section 5138 of the Revenue and Taxation Code, as a part of the tax collected by the county had been levied by the city, but a judgment against the city for the whole sum collected was not thereby warranted." Likewise, it appears clear that where only city taxes are involved, the county as well as the city may properly be sued where collection was made by the county.

For the reasons above stated the judgments are reversed, with directions that the demurrers be overruled and defendants permitted to answer if they be so advised.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Spence, J., concurred.

The petitions of respondents (County of Orange and City of Huntington Beach) for rehearings were denied June 8, 1955.