[Civ. No. 16633. Third Dist. Jan. 12, 1978.]

CALIFORNIA CORRECTIONAL OFFICERS' ASSOCIATION AND CORRECTIONAL SERIES, INCORPORATED, Plaintiff and Appellant, v. BOARD OF ADMINISTRATION OF THE PUBLIC EMPLOYEES' RETIREMENT SYSTEM et al., Defendants and Respondents.

**COUNSEL**

William D. Heekin and James M. Mize for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, and William J. Power, Deputy Attorney General, for Defendants and Respondents.

## OPINION

**REGAN, J.**—The California Correctional Officers' Association and Correctional Series, Incorporated (association) appeals from the judgment of the superior court denying its petition for writ of mandate and refusing relief under its complaint for declaratory relief.

The case involves the statutory interpretation of Penal Code section 830.5, subdivision (d), which grants to certain correctional, parole and probation officers the same status as members of the California Highway Patrol and State Police Division for the purpose of obtaining any group insurance benefits available to such peace officers.[1]

The association sought to compel the Board of Administration of the Public Employees' Retirement System and William E. Payne, its executive officer (board) to approve a separate medical health insurance plan proposed by the association for the benefit of its members. The association alleged the board's refusal to approve the medical plan was without authority and was inconsistent with and in conflict with the Meyers-Geddes State Employees' Medical and Hospital Care Act[2] (Meyers-Geddes Act) and was therefore invalid and ineffective. The association also sought declaratory relief, alleging the board had adopted a policy of refusing to consider for approval basic health benefit plans submitted by employee organizations after October 2, 1961.

The principal contention on appeal is that the trial court's denial of the writ and of the requested relief is contrary to the legislative intent of Penal Code section 830.5, subdivision (d).

The association was organized in 1957 as an employees' association to represent members who are employees of the State Department of Corrections.

---

[1]Penal Code section 830.5, subdivision (d), added in 1972, reads as follows in its entirety: "(d) Any peace officer under this section shall have the same status of a peace officer provided for in subdivision (a) or (b) of Section 830.2 for the purpose of obtaining any group insurance benefits available to such peace officers."

A "peace officer" defined by subdivisions (a) and (b) of Penal Code section 830.2 includes members of the California Highway Patrol and California State Police Division respectively.

[2]Government Code section 22751 et seq. added by Statutes 1961, chapter 1236, section 1, page 2984.

In 1961 the Meyers-Geddes Act was enacted by the Legislature. The act established a health insurance program for state employees, the premiums of which were to be paid for partially by the state and partially by the employees covered under the program. Pursuant to the act the board was given the discretionary power to contract for basic health benefit plans or approve such plans offered by employee organizations.[3] However, certain employee associations provided basic medical benefit plans for the members of their respective associations prior to the enactment of the Meyers-Geddes Act. Those basic health insurance plans in existence on January 1, 1962, were therefore "grandfathered" into the act. (See Gov. Code, § 22790.) The California Association of Highway Patrolmen was one of the associations which had such a plan in existence and, therefore, its separate plan was approved.[4]

The association had no basic health plan in effect prior to January 1, 1962; however, in 1965 and again in 1968 it presented its own separate employee-sponsored basic health plan to the board for approval. Due to the small size and low-risk character of its membership, the association's plan would have cost less than what was being paid by the average state employee.[5] The board turned down both plans pursuant to its discretionary power to approve or deny plans not in existence prior to January 1,

---

[3]Government Code section 22790 provides as follows: "The board *may* contract with carriers for basic health benefit plans, comprehensive benefit plans, and, for employees and annuitants who are also covered under basic plans, major medical plans or approve basic health benefit plans offered by employee organizations, provided that the carriers have operated successfully in the prepaid hospital and medical care field prior to the contracting for or approval thereof. Such plans shall include hospital benefits, surgical benefits, in-hospital medical benefits, outpatient benefits, obstetrical benefits, and may include other benefits including, but not limited to, benefits offered by a bona fide church, sect, denomination or organization whose principles include healing entirely by prayer or spiritual means. The board *shall* approve any basic health benefit plan in existence on January 1, 1962, which meets the requirements of this part and the minimum standards and other rules and requirements prescribed by the board, and for which payroll deductions were authorized under Section 1156 of this code." (Italics added.)

[4]The other plans "grandfathered" into the act were those of the Association of California State University Professors and the California Fish and Game Wardens Protective Association.

[5]The average age of the association members is lower than the state employees' average; entrance age of correctional officers is limited to persons between the ages of 21-35; retirement age is 55 as opposed to 60 for the majority of state employees; 98 percent of the employees are males, whereas 33.2 percent of state employees are females. Females and older state employees constitute a higher insurance risk. The association has approximately 4,200 members and it is estimated a separate plan could save each member $10 per month.

1962. The association members thus remain eligible for coverage under the various "open plans" contracted by the board and available generally to all state employees.[6]

In February 1974 and again in June 1974, the board again rejected separate employee-sponsored plans proposed by the association on the ground that separation of a low health-risk group from those covered under the board-contracted "open plans" would increase the rate of such plans for the remaining employees of the state.

## CONTENTIONS

The association contends in effect that Penal Code section 830.5, subdivision (d), in granting employees in the State Department of Corrections the same *status* as highway patrolmen for purposes of obtaining group insurance benefits, gives these employees (through the association) the *same right* to obtain less expensive insurance coverage as is now enjoyed by the California Association of Highway Patrolmen. The association maintains that as long as its proposed plan otherwise complies with the goals and purposes of the Meyers-Geddes Act and will benefit the association's members, Penal Code section 830.5, subdivision (d), *mandates* board approval of such plan for state subsidization. In effect, the association is arguing that the Legislature's intent in enacting Penal Code section 830.5, subdivision (d), was to expand the special treatment now accorded the California Association of Highway Patrolmen to include the Correctional Officers Association. The association contends that Penal Code section 830.5, subdivision (d), would have no meaning and would be total surplusage unless it is given an interpretation that would annul *pro tanto* the board's discretionary power, pursuant to Government Code section 22790, and require a form of ministerial approval of the association's separate health plan. In other words, the association takes the position that Penal Code section 830.5, subdivision (d), in part conflicts with and therefore amends Government Code section 22790.

We cannot agree with the association's interpretation. It is well settled that where two provisions of the law appear to conflict, reconciliation should be sought so as to give effect to both. (*People* v.

[6]The board-contracted plans available in general to all state employees are Blue Cross-Blue Shield, Cal-Western Occidental, Kaiser North and Kaiser South, and some others.

*Zankich* (1971) 20 Cal.App.3d 971, 980 [98 Cal.Rptr. 387].) The courts are bound, if possible, to maintain the integrity of both statutes if the two may stand together. (*Penziner* v. *West American Finance Co.* (1937) 10 Cal.2d 160, 176 [74 P.2d 252].) These basic rules of statutory interpretation were well set forth in *Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224], where the court stated that "various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole."

██ Government Code section 22790 states, in pertinent part, that: "The board *may contract* with carriers for basic health benefit plans, and for employees and annuitants who are also covered under basic plans, major medical plans or *approve* basic health benefit plans offered by employee organizations . . . . The board *shall approve* any basic health benefit plan in existence on January 1, 1962 . . . ." (Italics added.)

This section grants the board discretionary power to approve for subsidization a variety of health benefit plans on behalf of state employees. Nowhere in this section is the board *required* to approve a separate plan except those "grandfathered" into the act.

In exercising its discretionary power, the board is to be guided by the needs and welfare of the individual employees, of particular classes of employees, and of the state, as well as by prevailing practices in the field of prepaid medical and hospital care. (Gov. Code, § 22775.) In disapproving the various plans presented to it, the board determined that although a separate plan would benefit the association members through lower rates, the cost to other state employees and the state would correspondingly increase. Moreover, board members expressed concern for the "overall best interests of state employees," in that this proposal would set a precedent for further "splintering" the health plans under the Meyers-Geddes Act and could open the door to many other groups.

Interpreting Penal Code section 830.5, subdivision (d), as *mandating* board approval of the association plan is inconsistent with the discretionary powers granted to the board by Government Code section 22790 and also section 22790.1. (The latter relates to "major medical" coverage.)

We believe Penal Code section 830.5, subdivision (d), can be given an interpretation which will give it a meaning that "harmonizes" it with the

Government Code sections discussed above. Granting correctional officers the same *status* as highway patrolmen and state police does not necessarily provide them with the same *rights* and *privileges* as to insurance enjoyed by members of the highway patrolmen's association due to the patrolmen's pre-1962 health plan. We note in this connection that the California State Police do not have the same type of pre-1962 closed plan of insurance benefits as do the members of the highway patrolmen's association, nor is there any provision in the codes which grants them a right to such benefits.

■ By granting certain Department of Corrections officers the same status for group insurance as highway patrolmen and state policemen we believe the Legislature simply intended that the low-risk insurance status of peace officers *could* be made available for the benefit of the correctional officers if they desired their own private closed plan *and* the board in its discretion approved it. Nowhere, however, does Penal Code section 830.5, subdivision (d), purport to *require* the board to approve any particular plan.

Moreover, Penal Code section 830.5, subdivision (d), also places correctional officers on an equal footing with highway patrolmen and state police in the event the latter two groups are in the future given some insurance advantage not made available to state employees generally. A somewhat analogous situation arose in *Malone* v. *State Emp. Retirement System* (1957) 151 Cal.App.2d 562 [312 P.2d 296], wherein the court interpreted section 21208 of the State Employees' Retirement Law which provided that "The provisions of this chapter applicable to patrol members are applicable to warden members . . . ." The section was interpreted to extend benefits *thereafter* provided for patrol members to warden members. (151 Cal.App.2d at p. 564.)

Additional recognized extrinsic aids to statutory construction bolster our view as to the legislative intent of Penal Code section 830.5, subdivision (d). The board, in denying the association's request for a separate medical insurance plan, determined that Penal Code section 830.5, subdivision (d), had no force and effect with respect to the board and its administrative powers under the Meyers-Geddes Act. The board determined that its power to approve or disapprove medical plans, pursuant to Government Code section 22790, was still intact. ■ A contemporaneous administrative construction of an enactment by those charged with its enforcement and interpretation is entitled to great

weight, and the courts generally will not depart from such construction unless it is clearly erroneous or unauthorized. (*Coca-Cola Co.* v. *State Bd. of Equalization* (1945) 25 Cal.2d 918, 921 [156 P.2d 1]; *Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 647 [335 P.2d 672]; *Flores* v. *Unemployment Ins. Appeals Bd.* (1973) 30 Cal.App.3d 681, 684 [106 Cal.Rptr. 543].)

In 1973, an opinion was requested from the Attorney General. The question presented was as follows: "On or after the effective date of chapter 198, of the Statutes of 1972 [referring to Pen. Code, § 830.5, subd. (d)], will correctional officers be afforded the same group health insurance benefits as are available to California Highway Patrolmen under the Meyers-Geddes State Employees' Medical and Hospital Care Act?"

In the opinion of the Attorney General correctional officers were afforded the same group health insurance benefits as were available to California Highway Patrolmen under the Meyers-Geddes Act *except* those available solely to members of the Association of California Highway Patrolmen. Opinions of the Attorney General are entitled to great weight as an administrative construction of a statute. (*Cristmat, Inc.* v. *County of Los Angeles* (1971) 15 Cal.App.3d 590, 595 [93 Cal.Rptr. 325]; *Stribling's Nurseries, Inc.* v. *County of Merced* (1965) 232 Cal.App.2d 759, 763 [43 Cal.Rptr. 211]; *Meyer* v. *Board of Trustees* (1961) 195 Cal.App.2d 420, 431-432 [15 Cal.Rptr. 717].) "It must be presumed that the aforesaid interpretation [of the Attorney General] has come to the attention of the Legislature, and if it were contrary to the legislative intent that some corrective measure would have been adopted in the course of many enactments on the subject in the meantime." (*Id.* at p. 432; see also *Southwest Explor. Co.* v. *County of Orange* (1955) 44 Cal.2d 549, 554 [283 P.2d 257].)

In the present case there has been no change in the language of Penal Code section 830.5, subdivision (d), subsequent to the board's interpretation of the Attorney General's opinion. In fact, in 1974 an *identical* insurance provision was inserted with the addition of Penal Code section 830.5a, providing that certain additional employees in the Department of Corrections are peace officers.[7]

---

[7] Penal Code section 830.5a, subdivision (b), added by Statutes 1974, chapter 420, section 1, page 1017, urgency, effective July 10, 1974.

■ The board and the lower court have given Penal Code section 830.5, subdivision (d), an interpretation which harmonizes it with Government Code sections 22790 and 22790.1. We give it the same interpretation, and in doing so we hold that Penal Code section 830.5, subdivision (d), should not be read as limiting the discretionary powers of the board.

The judgment is affirmed.

Puglia, P. J., and Paras, J., concurred.

A petition for a rehearing was denied February 7, 1978, and appellant's petition for a hearing by the Supreme Court was denied March 9, 1978.