TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

———————————————

|  |  |  |
|---|---|---|
| | : | |
| OPINION | : | No. 85-1101 |
| | : | |
| of | : | AUGUST 8, 1986 |
| | : | |
| JOHN K. VAN DE KAMP | : | |
| Attorney General | : | |
| | : | |
| ANTHONY S. DA VIGO | : | |
| Deputy Attorney General | : | |
| | : | |

———————————————————————————————————————

THE HONORABLE JAY R. STROH, DIRECTOR, DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL, has requested an opinion on the following questions:

1. Is the Department of Alcoholic Beverage Control authorized to adopt a regulation allowing a retail licensee to transport tax paid alcoholic beverages to a Free Port warehouse facility maintained by the retailer outside the state for "temporary retention" prior to delivery to the retailer's licensed premises in California?

2. Is the Department of Alcoholic Beverage Control authorized to adopt a regulation allowing a retail licensee to transport alcoholic beverages on its own vehicles from a Free Port warehouse facility maintained by the retailer outside the state to the retailer's licensed premises in California?

1

CONCLUSIONS

1.  The Department of Alcoholic Beverage Control is not authorized to adopt a regulation allowing a retail licensee to transport tax paid alcoholic beverages to a Free Port warehouse facility maintained by the retailer outside the state for "temporary retention" prior to delivery to the retailer's licensed premises in California, if such retention constitutes storage.

2.  The Department of Alcoholic Beverage Control is not authorized to adopt a regulation allowing a retail licensee to transport alcoholic beverages on its own vehicles from a Free Port warehouse facility maintained by the retailer outside the state to the retailer's licensed premises in California, if such goods have been stored in the out-of-state facility.

ANALYSIS

The inquiries presented concern the validity of a revised form of proposed regulation by the Department of Alcoholic Beverage Control ("department", *post*) permitting a retail licensee to store tax paid alcoholic beverages outside the state for the sole purpose of subsequent transportation to its retail licensed premises in California. The principal issues presented are whether the previously issued opinion (62 Ops.Cal.Atty.Gen. 824 (1979)) evaluating an earlier version of the proposed regulation (numbered 8.1; *id.* at pp. 830-831) misinterpreted the pertinent provisions of the Business and Professions Code[1] and if not, whether the latest revised form (numbered 77; Appendix "A", *post*) will elicit a different response.

Specifically, the first inquiry is whether the department may by regulation allow a retail licensee to transport tax paid alcoholic beverages to a Free Port warehouse facility maintained by the retailer outside the state for "temporary retention" prior to delivery to the retailer's premises in this state.  Section 23106 provides:

"(a) Wine stored in a winery or wine cellar bonded under the internal revenue laws of the United States and brandy in bulk stored in an internal revenue bonded warehouse may be stored by or for any licensee without the necessity of any license by the person furnishing or providing the storage space.

"(b) Beer and wine upon which excise taxes have been paid to the state at the rate fixed under Part 14 of Division 2 of the Revenue and

---

[1] All unnumbered section references herein are to said code.

2

85-1101

Taxation Code may be stored by or for any licensee in any private or public warehouse or elsewhere in this state without the necessity of any license by the person furnishing or providing the storage space or any special additional license by the licensee.

"(c) Any other alcoholic beverage may, without the necessity of any additional license, be stored by or for a licensee in private warehouses approved by the department, if within the limits of the county in which the licensee's licensed premises are located, or in a public warehouse within the county, or may be stored in bond in a public warehouse outside that county if the public warehouse is also a United States customs bonded warehouse, a United States internal revenue bonded warehouse, or a United States bonded wine cellar. An application for the approval of a private warehouse shall be accompanied by a fee of fifty dollars ($50)."

Subdivision (a) concerns storage in an internal revenue bonded winery, wine cellar or warehouse, and does not pertain to the present inquiry. Subdivision (b), insofar as it is pertinent to the inquiry, permits the storage of wine upon which excise taxes have been paid "in this state without the necessity of any license." The issue arises whether the words "in this state" are words of limitation. If not, they are insignificant and in violation of the interpretive precept that "[e]very word, phrase or pro- vision employed in a statute is intended to have meaning and to perform a useful function. . . ." (*White* v. *County of Sacramento* (1982) 31 Cal.3d 676, 681.) Hence, in our view, the term "in this state" does not include "out of this state" and constitutes an implied prohibition against either the storage of tax paid wine outside the state or the storage of tax paid wine outside the state without a license. As will be discussed below, the distinction as to licensure is academic. Hence, the storage of tax paid wine outside the state is prohibited.

Subdivision (c) provides us with a grand litany of distinctions and contextual variables designed to frustrate the selection of any preferred construction. The first four words, "[a]ny other alcoholic beverage," may refer to those other than "beer and wine," or perhaps "beer and wine upon which excise taxes have been paid" as prescribed in subdivision (b). A distinction is drawn by the words "without the necessity of any additional license" between those warehouses which do and those which do not require an additional license. In the same sentence, other distinctions are drawn between private and public warehouses; between those approved and not approved by the department; between private warehouses within the limits and those outside the limits of the county in which the licensee's licensed premises are located; between public warehouses within and outside the same limits; between public warehouses which are bonded and those which are not; and between those warehouses which are public, bonded and outside the county

3

and which are or are not also a bonded United States customs, internal revenue or wine cellar.

Making no attempt to catalogue all of the tenable interpretations, the following are based upon the distinctions as to licensure and location within the county in which the licensee's premises are located. With regard to location, the issue arises whether the words "within the limits of the county" (which, preceded by the word "if," are clearly words of limitation) constitute a constraint upon the storage of "other" alcoholic beverages out of the county but within the state, or out of the county and out of the state. The subdivision contains no such distinction which would suggest that the constraint would not extend, as a matter of reasoned import, beyond the state boundaries.

With regard to licensure, three inferences may be drawn. First, there being no words of prohibition in the statute, alcoholic beverages may also be stored other than as specified in that subdivision without a license. This would violate the interpretive rule that the specification of particulars implies the exclusion of others. (*Williams* v. *Los Angeles Met. Transit Auth.* (1968) 68 Cal.2d 599, 603-604; 67 Ops.Cal.Atty.Gen. 70, 71 (1984).) The second inference, an implied negative, would be that alcoholic beverages may be stored other than as specified in that subdivision only with a license. A third extended negative inference would preclude storage other than as specified in that subdivision with or without a license.

As with regard to subdivision (b), the distinction as to licensure is academic since the out-of-state storage of alcoholic beverages is, in either case, precluded. Both subdivisions (b) and (c) pertain to both private and public warehouses. With respect to public warehouses (cf. §§ 23320(14), 23036, 23375), the issuance of an extraterritorial license is not authorized. (Cf. § 24041; 62 Ops.Cal. Atty.Gen., *supra*, 828; Cal. Const., art. XX, § 22: "The State of California . . . shall have the exclusive right and power to license and regulate the manufacture, sale, purchase, possession and transportation of alcoholic beverages *within the State* . . ." [emphasis added]; and cf. 67 Ops. Cal.Atty.Gen. 7, 11-12 (1984).) The lack of authority with respect to private warehouses which are the subject of the proposed regulation is even more fundamental since no such license is statutorily indicated. (See §§ 23320, 23035.)

It has been suggested, however, that the word "storage" in section 23106 does not include "temporary retention" in the retailer's warehouse. In fact, the proposed rule expressly provides that "[s]torage shall mean the keeping or retention of goods but shall not include any keeping or retention of goods in a facility approved by the department . . . for the sole purpose of subsequently transporting the goods to a California licensed retail premises . . . ." Section 25750 provides in part:

4

"The department shall make and prescribe such reasonable rules as may be necessary or proper to carry out the purposes and intent of Section 22 of Article XX of the Constitution and to enable it to exercise the powers and perform the duties conferred upon it by that section or by this division, *not inconsistent with any of the provisions of any statute of this State, including particularly the provisions of this division . . . .*"  (Emphasis added.)

We reiterate the admonition contained in 62 Ops.Cal.Atty.Gen., *supra*, 826-827:

"As previously noted, the Department's constitutional mandate allows it to 'have the exclusive power . . . in accordance with laws enacted by the Legislature, to license the manufacture, importation and sale of alcoholic beverages in this State . . . .' (Cal. Const., art. XX, § 22.)  The statutory rule-making authority of the Department similarly requires that all Department regulations be 'not inconsistent with any of the provisions of any statute of this State.' (§ 25750.)  Government Code section 11373 [see now, § 11342.1] requires that 'each regulation adopted, to be effective must be within the scope of authority conferred,' while Government Code section 11374 [see now, § 11342.2] provides, 'no regulation adopted is valid or effective unless consistent and not in conflict with the statute and reasonably necessary to effectuate the purpose of the statute.'

"The Supreme Court has addressed the general issue of the scope of administrative regulations on numerous occasions, stating 'no regulation is valid if its issuance exceeds the scope of the enabling statute' (*Wildlife Alive* v. *Chickering* (1976) 18 Cal.3d 190, 205), and 'An administrative officer may not make a rule or regulation that alters or enlarges the terms of a legislative enactment.' (*Whitcomb Hotel, Inc.* v. *Cal. Emps. Com.* (1944) 24 Cal.2d 753, 757.)  Moreover, 'administrative regulations that violate acts of the Legislature are void and no protestations that they are merely an exercise of administrative discretion can sanctify them.  They must conform to the legislative will if we are to preserve an orderly system of government.' (*Morris* v. *Williams* (1967) 67 Cal.2d 733, 737.)  This fundamental doctrine is applicable not only to statutes creating the agency and statutes which the agency must administer, but also to any other statutes enacted by the Legislature, regardless of the motivation of the agency. (*Agricultural Labor Relations Bd.* v. *Superior Court* (1976) 16 Cal.3d 392, 419-420.)"

5

85-1101

A proposed regulation which would permit a retail licensee to store alcoholic beverages in its private warehouse outside the state pending importation and sale within the state is clearly inconsistent with section 23106. Proposed rule 77 is not saved by virtue of its definition of "storage" which is also inconsistent with the statutory meaning. As stated in *People* v. *Spencer* (1975) 52 Cal.App.3d 563, 565, statutory language is reasonably certain if it can be understood with the aid of reference to the dictionary. "Storage" may be defined as "the safekeeping of goods in a warehouse or other depository." (Webster's Third New Internat. Dict. (1961) p. 2252; and see Black's Law Dict. (5th ed. 1979) p. 1273.) The familiar rule that effect must be given to statutes "according to the usual, ordinary import of the language employed in framing them" (*Moyer* v. *Workman's Comp. App. Bd.* (1973) 10 Cal.3d 222, 230) is pertinent.

Nor is the proposed rule saved by virtue of its reference to the words "temporary retention." Absent any limitation upon the duration of "temporary retention," there is no distinction between it and storage. The proposed rule would permit retention of goods in a warehouse for an indefinite period of time, a concept indistinguishable from that of storage, and thus one which is prohibited by the statute.

We do not imply that the concept of temporary retention is inherently violative of the statutory scheme. There could be a period in which goods cease motion in the process of distribution, whether for transfer to other vehicles or for other purposes, which due to the intent of the distributors or the nature of the event would not constitute storage.

The department has the power by regulation to make distinctions, consistent with the legislative intent, between temporary motionlessness in the stream of commerce and the more enduring stillness ordinarily meant by the word "storage." As the proposed rule contains no such distinctions, but rather includes within the term "temporary retention" a limitless variety of suspended movement, it does not withstand scrutiny.

It is concluded that the department is not authorized by regulation to allow a retail licensee to transport tax paid alcoholic beverages to its Free Port warehouse facility outside the state for "temporary retention" prior to delivery to its premises in this state, if such retention constitutes storage.

The second inquiry is whether the department may by regulation allow a retail licensee to transport alcoholic beverages on its own vehicles from a Free Port warehouse facility maintained by the retailer outside the state to the retailer's premises in this state. Section 23661 provides:

6

"Except as otherwise provided in this section, alcoholic beverages may be brought into this state from without this state for delivery or use within the state only by common carriers and only when the alcoholic beverages are consigned to a licensed importer, and only when consigned to the premises of the licensed importer or to a licensed importer or customs broker at the premises of a public warehouse licensed under this division.

"The provisions of this chapter are not applicable in the case of alcoholic beverages which are sold and delivered by a licensee in this state to another licensee in this state, and which in the course of delivery are taken without this state through another state without any storage thereof in such other state.

". . . . . . . . . . . . . . . . . . . . . ."

The words "only by common carriers" are clearly exclusive of all others, including a retail licensee, except as otherwise expressly provided.  The second paragraph provides an exception for alcoholic beverages which are sold and delivered by a licensee in this state to another licensee in this state, and which are transported *in the course of delivery* through another state *without any storage* thereof in such other state.  As discussed above with respect to a possible distinction between "temporary retention" and "storage," there is room for a distinction between certain conduct which may be incident to "the course of delivery" and "storage."  For example, goods arguably could be transferred from one truck to another while moving through another state without being considered to be in storage in that state.

Again, the department has the power by appropriate rule-making processes to draw that kind of fine distinction. The department may not, however, authorize any activity which would constitute storage.  Thus, a retail licensee may not transport alcoholic beverages into this state from an out-of-state warehouse facility where such goods have been stored.

Nor is the proposed rule saved by its own recital that delivery of goods to California from a warehouse in another state "shall be deemed to be in continuous transit from the time and place first purchased by the retailer" in this state, or that such delivery "shall not be considered the exportation or importation of alcoholic beverages from or to California."  An administrative agency is not authorized to alter or enlarge the terms of a legislative enactment.  (*Morris* v. *Williams* (1967) 67 Cal.2d 733, 748; 67 Ops.Cal.Atty.Gen. 325, 329 (1984).)  This rule is particularly applicable to a statutory exception such as the second paragraph of section 23661.  It is established in this regard

that exceptions to a general provision of a statute are strictly construed. (*Estate of Banerjee* (1978) 21 Cal.3d 527, 540.)

It is concluded that the department is not authorized by regulation to allow a retail licensee to transport alcoholic beverages on its own vehicles from its Free Port warehouse facility outside the state to its premises in this state, if such goods have been stored in the out-of-state facility.

The conclusions expressed herein are further supported by the presumption that the interpretation and conclusion set forth in 62 Ops.Cal.Atty.Gen. 824, *supra*, respecting sections 23106 and 23661 have come to the attention of the Legislature,[2] and if they were contrary to the legislative intent that some corrective measure would have been adopted during the course of the intervening period. (*California Correctional Officers' Assn.* v. *Board of Administration* (1978) 76 Cal.App.3d 786, 794; 67 Ops.Cal. Atty.Gen. 519, 522 (1984).) Further, both sections 23106 and 23661 have, since the issuance of 62 Ops.Cal.Atty.Gen. 824, *supra*, been amended in respects which have no bearing upon the issues here considered. (Stats. 1984, ch. 357, § 1; Stats. 1980, ch. 523, § 1, respectively.) It has been held that the failure to make changes in a given statute in a particular respect when the subject is before the Legislature, and changes are made in other respects, indicates an intention to leave the law unchanged in that respect. (*Williams* v. *Industrial Acc. Com.* (1966) 64 Cal.2d 618, 620.) "Parts of an amended statute not affected by the amendment will be given the same construction that they received before the amendment." (*Brailsford* v. *Blue* (1962) 57 Cal.2d 335, 339.) Thus, as a matter of reasoned hypothesis, the conclusions previously expressed in 62 Ops.Cal.Atty.Gen. 824, *supra*, accurately reflect the legislative intent.

A final issue arises whether the restriction as to the storage of alcoholic beverages out of state and as to the importation of alcoholic beverages other than by common carrier contravenes any constitutional proscription. Initially, such economic legislation is presumed to be constitutional; constitutional insufficiency must be clearly demonstrated, and any uncertainty will be resolved in favor of its validity. (*People* v. *Globe Grain Milling Co.* (1930) 211 Cal. 121, 127; *Alabama State Federation of Labor* v. *McAdory* (1945) 325 U.S. 450, 470.)

A review of both the state and federal constitutions reveals three principal provisions which pertain to the present inquiry; these provisions, relating to due process of law, equal protection of the laws, and interstate commerce, are discussed below.

---

[2] In this case, a substantially similar proposal to accomplish by legislation the objective of the proposed rule was introduced but not enacted. (AB 965, as amended in the Senate, April 14, 1980.)

Section 1 of the Fourteenth Amendment to the Constitution of the United States provides inter alia that no state shall deprive any person of life, liberty or property without due process of law. A virtually identical proscription is found in the California Constitution, article 1, section 7. The concept of substantive due process requires that a statute must bear a rational relationship to a legitimate governmental objective. (*Williamson* v. *Lee Optical Co.* (1955) 348 U.S. 483, 491.) However, the law need not be in every respect logically consistent with its aims to be constitutional; the courts will not review the wisdom or providence of state laws regulatory of business and industrial conditions. (*Id.* at pp. 487-488; *Ferguson* v. *Skrupa* (1963) 372 U.S. 726, 731-732.)

It is beyond the realm of dispute that the manufacture, importation, storage and distribution of alcoholic beverages in this state has become and remains the subject of particular legislative concern. Section 23001 is indicative of this concern:

> "This division is an exercise of the police powers of the State for the protection of the safety, welfare, health, peace, and morals of the people of the State, to eliminate the evils of unlicensed and unlawful manufacture, selling, and disposing of alcoholic beverages, and to promote temperance in the use and consumption of alcoholic beverages. It is hereby declared that the subject matter of this division involves in the highest degree the economic, social, and moral well-being and the safety of the State and of all its people. All provisions of this division shall be liberally construed for the accomplishment of these purposes."

As we observed in 62 Ops.Cal.Atty.Gen., *supra*, 829, the statutory requirement that such storage facilities must be located within the state allows for ready accessibility by department employees in determining whether adulteration, dilution, misbranding or mislabeling of alcoholic beverages has occurred. (See, §§ 25751, 25753, 25755.) The requirements as to storage and importation facilitate the exercise by the State Board of Equalization of its exclusive power to assess and collect such excise taxes as are imposed by law on account of the manufacture, importation and sale of alcoholic beverages in this state. (§ 23051.) In the absence of such requirements, beverages purchased tax paid in California and transported to an out-of-state warehouse could be returned to California commingled with beverages purchased out of state without payment of California alcoholic beverage taxes. The ability of law enforcement authorities to prevent the illegal importation of untaxed beverages could be greatly diminished.

Section 1 of the Fourteenth Amendment further provides inter alia that no state shall deny to any person within its jurisdiction the equal protection of the laws. The concomitant provision of the California Constitution is contained in article 1, section 7.

9

85-1101

It is evident that sections 23106 and 23661 establish various classifications including that between California retail licensees who maintain a warehouse in this state and those who maintain a warehouse in another state, and between those who operate a common carrier and those who do not. However, in the absence of a "suspect classification" (cf. *San Antonio Ind. Sch. Dist.* v. *Rodriguez* (1973) 411 U.S. 1, 28; *Massachusetts Board of Ret.* v. *Murgia* (1976) 427 U.S. 307, 313; *Sail'er Inn Inc.* v. *Kirby* (1971) 5 Cal.3d 1, 18) or of a "fundamental right" (cf. *San Antonio Ind. Sch. Dist.* v. *Rodriguez*, *supra*, at pp. 33-34; *D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 18), the constitutional right to equal protection requires only that the subject classification bear some rational relationship to a legitimate governmental purpose. (*Schwalbe* v. *Jones* (1976) 16 Cal.3d 514, 517-518; *Dandridge* v. *Williams* (1970) 397 U.S. 471, 485; 62 Ops.Cal. Atty.Gen. 106 (1979).) In *B.P.O.E. Lodge No. 2043 of Brunswick* v. *Ingraham* (Supr. Ct. Maine, 1972) 297 A.2d 607, 611-613, app. dism. 410 U.S. 903, the court stated:

"On the contrary, the activity of selling intoxicating liquors lies essentially outside the sphere of privacy or private entitlements. Individual human beings do not possess, ipso facto, or a priori -- by virtue of their existence as natural creatures from whose consent alone government derives existence, authority and power -- any rights to engage in the selling of intoxicating liquors. The activity is neither protected, specifically, in the Bill of Rights (federal or state) nor generally comprehended within the overall matrix of conduct which government may not absolutely prohibit but may only regulate.

"Rather, because of the nature of intoxicating liquors and the enormous problems developed by the traffic in them, the police power of the State in this area of human activity has been recognized, consistently with any and all aspects of constitutional limitations, to be the most fulsome embodied in the concept of sovereignty.

". . . . . . . . . . . . . . . . . . . . . .

"Specifically as to the impact of the Fourteenth Amendment of the Constitution of the United States, it was said in Opinion of the Justices, 132 Me. 512, 518, 174 A. 853 (1933), quoting language of the Supreme Court of the United States in Crane v. Campbell, 245 U.S. 304, 38 S.Ct. 98, 62 L.Ed. 304 (1917):

"""It must now be regarded as settled that, on account of their well-known noxious qualities and the extraordinary evils shown by experience commonly to be consequent upon their use, a State has power absolutely to

10

prohibit manufacture, gift, purchase, sale, or transportation of intoxicating liquors within its borders without violating the guarantees of the Fourteenth Amendment. . . .

". . . . . . . . . . . . . . . . . . . . . .

"Rather, we are in a zone of activity governed by the traditional criterion for ascertainment of compliance with both the 'equal protection of the laws' and 'due process' clauses of the Fourteenth Amendment, -- whether any rational relationship to a legitimate State purpose may be reasonably conceived.  McGowan v. Maryland, 366 U.S. 420, 425, 426, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961)."

Again, it is determined, in view of their manifest purposes and design as previously discussed, that sections 23106 and 23661 bear a rational relationship to a legitimate governmental purpose.

We turn next to article 1, section 8, clause 3 of the United States Constitution which provides that Congress shall have the power to "regulate commerce with foreign nations, and among the several States, and with the Indian tribes."  In *City of Philadelphia* v. *New Jersey* (1978) 437 U.S. 617, 623-624, the United States Supreme Court set forth the following basic principles:

"Although the Constitution gives Congress the power to regulate commerce among the States, many subjects of potential federal regulation under that power inevitably escape congressional attention 'because of their local character and their number and diversity.'  *South Carolina State Highway Dept.* v. *Barnwell Bros., Inc.*, 303 U.S. 177, 185.  In the absence of federal legislation, these subjects are open to control by the States so long as they act within the restraints imposed by the Commerce Clause itself.  See *Raymond Motor Transportation, Inc.* v. *Rice*, 434 U.S. 429, 440.  The bounds of these restraints appear nowhere in the words of the Commerce Clause, but have emerged gradually in the decisions of this Court giving effect to its basic purpose.  That broad purpose was well expressed by Mr. Justice Jackson in his opinion for the Court in *H. P. Hood & Sons, Inc.* v. *Du Mond*, 336 U.S. 525, 537-538:

"'This principle that our economic unit is the Nation, which alone has the gamut of powers necessary to control of the economy, including the vital power of erecting customs barriers against foreign competition, has as its corollary that the states are not separable economic units.  As the Court

11

said in *Baldwin* v. *Seelig*, 294 U.S. [511], 527, "what is ultimate is the principle that one state in its dealings with another may not place itself in a position of economic isolation.'

"The opinions of the Court through the years have reflected an alertness to the evils of 'economic isolation' and protectionism, while at the same time recognizing that incidental burdens on interstate commerce may be unavoidable when a State legislates to safeguard the health and safety of its people. Thus, where simple economic protectionism is effected by state legislation, a virtually *per se* rule of invalidity has been erected. . . ."

Thus, the crucial inquiry is whether the statute in question "is basically a protectionist measure, or whether it can fairly be viewed as a law directed to legitimate local concerns, with effects upon interstate commerce that are only incidental." (*City of Philadelphia* v. *New Jersey*, *supra*, 437 U.S. at p. 624; cf. 52 Ops.Cal.Atty.Gen. 25, 27 (1969).) Both the purpose and design of sections 23106 and 23661 are directed to legitimate local concerns, namely, to maintain ready accessibility by department employees for inspection and investigatory purposes and to facilitate the assessment and collection of excise taxes by the State Board of Equalization. There is no indication whatever, nor has the suggestion been made, that the force or effect of the regulatory scheme is to promote local enterprise.

Where a statute, as here, is not a matter of "simple economic protectionism," and other legislative objectives are credibly advanced, the Supreme Court has adopted the more flexible approach set forth in *Pike* v. *Bruce Church, Inc.* (1970) 397 U.S. 137, 142:

"Where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. . . . If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities."

(See *City of Philadelphia* v. *New Jersey*, *supra*, 437 U.S. 617.) In *Hughes* v. *Oklahoma* (1979) 441 U.S. 322, 336, the Supreme Court again referred to the quoted language in *Pike* v. *Bruce Church, Inc.*, *supra*, 397 U.S. 137, and expounded as follows:

"Under that general rule we must inquire (1) whether the challenged statute regulates evenhandedly with only 'incidental' effects on interstate commerce, or discriminates against interstate commerce either on its face or in practical effect; (2) whether the statute serves a legitimate local purpose; and, if so, (3) whether alternative means could promote this local purpose as well without discriminating against interstate commerce. The burden to show discrimination rests on the party challenging the validity of the statute, but '[w]hen discrimination against commerce . . . is demonstrated, the burden falls on the State to justify it both in terms of the local benefits flowing from the statute and the unavailability of nondiscriminatory alternatives adequate to preserve the local interests at stake.' Hunt v. Washington Apple Advertising Commission, 432 U.S. 333, 353 (1977) . . . ."

The California regulation in question bears a minimal impact on interstate commerce which may be characterized as "incidental." The restriction against out-of-state storage is limited only to storage by or for California retail licensees in other than a United States bonded warehouse of alcoholic beverages to be sold in California. The restriction as to the importation of alcoholic beverages is limited only to the identification of the importer as a common carrier, with numerous exceptions including that applicable to goods sold and delivered by a licensee in this state to another licensee in this state and transported through another state without storage. The question presented, therefore, is whether the state can "justify it both in terms of the local benefits flowing from the statute and the unavailability of nondiscriminatory alternatives adequate to preserve the local interests at stake." (*Pike* v. *Bruce Church, Inc.*, *supra*, 397 U.S. 137.) In this regard, our attention has not been directed, nor are we aware of any available alternative means which could promote *as well* the purposes of the statute without discriminating against interstate commerce.

While we cannot conduct the same searching inquiry into these issues of fact as would be provided by judicial process, we believe that sufficient local justification for sections 23106 and 23661 could be established to warrant a finding by a court that the benefits of the statute outweigh the incidental burdens on interstate commerce and to produce a declaration that it is not violative of the Commerce Clause. (Cf. 62 Ops.Cal.Atty.Gen. 351 (1979).)

*****

13

APPENDIX "A"

Proposed Rule 77

I. <u>Definitions</u>. For the purposes of this rule, the following definitions shall apply:

(a) Storage — "Storage" shall mean the keeping or retention of goods but shall not include any keeping or retention of goods in a facility approved by the department pursuant to this rule 77 for the sole purpose of subsequently transporting the goods to a California licensed retail premises or a private or public warehouse in California.

(b) Free Port — "Free Port" shall mean an out-of-state warehouse for personal property consigned to such warehouse for temporary retention in transit to a final destination in California, which personal property is deemed under the law of the state in which such warehouse is located to have acquired no situs in such state for purposes of taxation, including without limitation "Free Port" warehouses pursuant to article X of the Nevada Constitution and section 361.160 et seq., of the Nevada Revised Statutes.

II. <u>Retail Licensee: Out-of-State Transit and Temporary Retention</u>. Any California licensed retailer who lawfully purchases from another licensee in California alcoholic beverages manufactured in California or alcoholic beverages which have been brought into California from without California for delivery and use within California may, as provided for by section 23661 of the Business and Professions Code, transport the alcoholic beverages so purchased to a Free Port warehouse facility maintained by the retailer outside of California for temporary retention and delivery to the retailer's licensed retail premises in California or a private or public warehouse in California as permitted by section 23106 of the Business and Professions Code, provided the retailer complies with the following terms and conditions:

(a) The retailer shall complete a form prescribed by the department to apply for approval of such temporary retention at a Free Port out of California in the course of delivery to California licensed retail premises or a private or public warehouse in California.

(b) The records of all transactions involving the purchase, temporary retention, distribution and inventory of alcoholic beverages shall be maintained at one of the retailer's licensed premises in California as required by sections 23334 and 25752 of

14

the Business and Professions Code, and the records shall be made available to the department upon request.

(c)  The retailer shall permit the department to make any examination of the books and records and to visit and inspect the retailer's Free Port warehouse facility under the same authority granted the department pursuant to section 25753 of the Business and Professions Code.

(d)  The California excise tax paid alcoholic beverages purchased by the retailer may be temporarily retained in and/or distributed from the retailer's Free Port warehouse facility.  Except for California excise tax paid alcoholic beverages purchased from a California licensee, no alcoholic beverages may be temporarily retained in and/or distributed from the retailer's Free Port warehouse facility.

(e)  All alcoholic beverages temporarily retained in the retailer's Free Port warehouse facility shall be in the custody and control of an independent, bonded warehouseman assigned to the premises.  The retailer shall be responsible for the costs thereof.

(f)  The retailer shall give notice to the Board of Equalization prior to the release of alcoholic beverages from the Free Port warehouse that such alcoholic beverages are continuing in transit for delivery to the retailer's licensed retail premises or private or public warehouse in California.

(g)   The retailer shall reimburse the department for the cost of any inspections by the department of the retailer's Free Port warehouse facility.

(h)  The retailer shall post a bond satisfactory to the department as security for the reimbursement of any costs incurred by the department in inspecting the retailer's Free Port warehouse facility and for the correction of any irregularities disclosed by the department's inspection.

(i)  In no event shall beer be temporarily retained in and/or distributed from the retailer's Free Port warehouse facility.

Alcoholic beverages delivered to California licensed retail premises via a retailer's Free Port warehouse facility as provided for in this rule 77 shall be deemed to be in continuous transit from the time and place first purchased by the retailer.

Such delivery to California licensed retail premises or a private or public warehouse in California via a retailer's Free Port warehouse facility shall not be

15

considered the exportation or importation of alcoholic beverages from or to California. A distilled spirits excise tax exception, under Revenue and Taxation Code section 32211, or a beer and wine tax credit as provided in section 32176 of the Revenue and Taxation Code shall not be applicable to the taxpayer.

Violation of any of the terms and conditions of this rule shall be grounds for the suspension or revocation of the retailer's license.

III. <u>Trial Review</u>. Two years from the date of adoption of this rule 77, the department may issue a Notice of Hearing and Review in accordance with the provisions of section 11346.4 of the Government Code. If such notice is issued, a public hearing shall be held to review the effect and operation of this rule 77.

85-1101